**FILED**

MAR 3 1 2016

Clerk, U.S. District and
Bankruptcy Courts

Bryon Burton Nevius
21355 Highway 179
Jamestown, Missouri 65046

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Bryon Burton Nevius,** *in propria persona* ) | |
| *Petitioner,* ) | |
| ) | Case: 1:16-mc-00650 |
| *v.* ) | Assigned To : Kollar-Kotelly, Colleen |
| ) | Assign. Date : 3/31/2016 |
| **UNITED STATES** ) ( | Description: Miscellaneous |
| *Respondent,* ) | |

### Petition to Quash Summons

Comes now Bryon B. Nevius ("Nevius") to Quash the following Summons, to wit:

(1) **Attachment 1—First National Bank of Omaha ("A1— First National Bank of Omaha")**—First National Bank of Omaha, 1620 Dodge Street, Stop Code 68197, Omaha, NE 68197; and,

(2) **Attachment 2—PNC Bank Summons ("A2— PNC Bank")**— PNC Bank, 4100 West 150th Street, Attn: Records Department, Cleveland, OH 44135.

### Table of Contents

I. Jurisdiction and Overview .................................................................................................. 3

   A.  Subject Matter Jurisdiction of Third Party Summons ......................................................... 5

     a. Subject Matter Jurisdiction Under 26 U.S.C. § 7609 .......................................................... 5

     b.  Subject Matter Jurisdiction of District Courts in 26 U.S.C. § 7604. .................................. 5

   B.  Subject Matter of "Internal Revenue Laws" Limited to the District of Columbia and Territories—Plenary Power of Congress. .................................................................................. 6

   C. Jurisdiction of 26 U.S.C. § 7602–Books and Records ......................................................... 7

     a. Essential Elements of 7602. ................................................................................................ 7

     b.  First Essential Element of 7602. ......................................................................................... 8

RECEIVED
Mail Room

MAR 3 1 2016

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1

c. Second Essential Element of 7602. ............................................................................. 8

1.  Substitute for Return under 26 U.S.C. § 6020(b) Under Bankruptcy Laws Can't Discharge the Liability Unless Signed By the Alleged Taxpayer, *i.e.,* Bankruptcy Court Only Under Article III and not in "Public Rights", *i.e.,* "District of Columbia," Territories and Possessions. ................................................................................................................ 9

d.  Third Essential Element of § 7602 ....................................................................... 10

1. Known Legal Duty is a Question of Law for the Courts. ............................................. 11

D.   Tax Court is the ONLY Remedy Initially for "Internal Revenue Laws," Which is the "Public Rights" Doctrine Under Venue and Jurisdiction of The District of Columbia and the Territories. ........................................................................................................................ 12

E.   United States District Court in the District of Columbia and Territories are Not Limited to Only Limited Jurisdiction Arising Under Article III of the Constitution of the United States. 13

F.   Personal Jurisdiction. ................................................................................................. 16

G.   (1) "citizen of Missouri." ........................................................................................... 16

H.   (2) The Fourteenth Amendment Doesn't Apply To "citizens of the United States" in the District of Columbia or to the District of Columbia. .............................................................. 18

I.   The Fifteenth Amendment Does not Confer any Right of Suffrage on Anyone. ................. 19

a.  USDC Precluded From Declaration that Appellant is a "Taxpayer" in 22 U.S.C. § 2201.

.................................................................................................................................. 19

b.  Internal Revenue Service Has Not Made a Determination That Nevius is a "Taxpayer."

.................................................................................................................................. 20

1. Expert Affidavits and Declarations are Considerate Evidence. ................................... 21

c.  Clear and Convincing Evidence. .......................................................................... 22

d.  Subornation of Perjury ........................................................................................ 24

e.  "Offense" in the Summons A1— First National Bank of Omaha and A2— PNC Bank  26

J.  Standing Arising under Article III. ............................................................................. 27

II.  Conclusion. ................................................................................................................ 27

III.  Declaration of Bryon Burton Nevius ........................................................................ 32

IV.  Certificate of Service ............................................................................................... 32

## I.  Jurisdiction and Overview

Nevius invokes the Subject Matter Jurisdiction to Quash All Summons which arises under the **Article III Section 2 of the Constitution of the United States** in all Cases, in Law and Equity exercising the judicial Power of the United States, being the **Laws of the United States** which is codified in 28 U.S.C. § 1331—Federal Question—"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

And further, as the United States District Court for the District of Columbia ("USDC—DC") is the only Court of the United States under the jurisdiction of Article III § 1[1] empowered to have jurisdiction of Laws of Congress under Article I  Section 8 Clause 18 of the "Internal Revenue Laws" enacted under the Plenary Power of Congress.[2]

And further, this USDC—DC also exercises the "**Article III characteristics** and devoted to matters of national concern.  Art. III courts, that is, the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit . . . to try cases arising under the Constitution and the nationally applicable **laws of Congress.**"[3]

---

[1] See *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), *infra*. See *Gidden v. Zdanok*, 370 U.S. 530, 533-534 (1962) "Article III Section 1."

[2] See *Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C. Cir. 2014), *infra.*

[3] *Palmore v. United States*, 411 U.S. 389, 407-409 (1973) "It is apparent that neither this Court nor Congress has read the Constitution as requiring every **federal question arising under the federal law**, or even every criminal prosecution for violating an **Act of Congress,** to be tried in an **Art. III** court before a judge enjoying lifetime tenure and protection against salary reduction. Rather, both Congress and this Court have recognized that **state courts are appropriate forums in which federal questions** and **federal crimes may at times be tried**; and that the **requirements of Art. III, which are applicable where law of national applicability and affairs of national concern are at stake, must in proper circumstances give way to accommodate plenary grants of power to Congress to legislate with respect to specialized areas having**

The USDC—DC and the "United States Court of Appeals for the District of Columbia" (D.C. Circuit")[4] do not arise under the limited jurisdiction of Courts of the United States arising under Article III Section 2 in all Cases, in Law and Equity exercising the judicial Power of the United States, posited in the USDC's in the several States of the Union; therein, this is the ONLY court of the United States that has jurisdiction of the Inquisitorial Internal Revenue Service ("IRS")[5] in reality being an Appellate Inquisitorial Court for the IRS; and, also empowered with the "characteristics" of an Article III Section 2 Court of the United States: and, having diversity of citizenship under 28 U.S.C. § 1332 evidenced by sworn affidavits of **A4—Cert. of Status**, *infra.*, and **A5—Voter**, *infra.*, of Nevius who is domiciled in Missouri and is a citizen of

---

**particularized needs and warranting distinctive treatment.** Here, Congress reorganized the court system in the District of Columbia and established one set of courts in the District with **Art. III characteristics** and **devoted to matters of national concern.** It also created a **wholly separate court system designed primarily to concern itself with local law and to serve as a local court system for a large metropolitan area**.

From its own studies, Congress had concluded that there was a crisis in the judicial system of the District of Columbia, that case loads had become unmanageable, and that neither those matters of national concern nor those of strictly local cognizance were being promptly tried and disposed of by the existing court system. See, e.g., 115 Cong.Rec. 25538 (1969); 116 Cong.Rec. 8091—8092 (1970).[14] The remedy in part, was to relieve the regular **Art. III courts, that is, the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit**, from the smothering responsibility for the great mass of litigation, civil and criminal, that inevitably characterizes the court system in a major city and to confine the work of those courts to that which, for the most part, they were designed to do, namely, **to try cases arising under the Constitution and the nationally applicable laws of Congress**. The other part of the remedy, equally essential, was to establish an entirely new court system with functions essentially similar to those of the local courts found in the 50 States of the Union with responsibility for trying and deciding those distinctively local controversies that arise under local law, including local criminal laws having little, if any, impact beyond the local jurisdiction.

[4] *Palmore v. United States*, 411 U.S. 389, 407-409 (1973), *ibid.*

[5] *United States v. O'Shea*, 662 F.Supp.2d 535, 539 (S.D.W.Va. 2009) "[T]he IRS possesses the "**power of inquisition**" **to investigate** possible unpaid tax liabilities . . . the purpose . . . **is not to accuse, but to inquire** . . . unless the [I am a] **taxpayer**."

Missouri therein invoking the diversity of citizenship of 28 U.S.C. § 1332.

And further, evidenced **A4—Cert. of Status**, *infra.,* and **A-5—Voter**, *infra.,* Nevius is

not a "citizen of the United States," *i.e.*, as stated in *United States v. Slater*, 545 F.Supp. 179,

182(D. Del. 1982) "Unless the defendant can establish that he is not a citizen of the United

States, the IRS possesses authority to attempt to determine his federal tax liability."

A. **Subject Matter Jurisdiction of Third Party Summons.**

**a. Subject Matter Jurisdiction Under 26 U.S.C. § 7609.**
These Summons identified as **A1—First National Bank of Omaha, pg. 2** "If you are the

taxpayer," *ibid.* pg. 2 "**Suspension of Periods of Limitation**—If you are the taxpayer" and **A2–**

**– PNC Bank, pg. 2** "If you are the taxpayer," *ibid.* pg. 2 "**Suspension of Periods of**

**Limitation**—If you are the taxpayer."


are all issued under Subject Matter Jurisdiction of 26 U.S.C. § 7609 according the

instructions attached to the Summons and the right of Intervention is found in 7609(b)(1), to wit:

> "(b) **Right to intervene; right to proceeding to quash**.-- (1) **Intervention.**--
> Notwithstanding any other law or rule of law, any person who is entitled to notice
> of a summons under subsection (a) shall have the right to intervene in any
> proceeding with respect to the enforcement of such summons under **section 7604.**

**b. Subject Matter Jurisdiction of District Courts in 26 U.S.C. § 7604.**

The Subject Matter Jurisdiction of the "district courts" identified *ibid*, § 7609, *supra,* is

found in § 7604 "If any person is summoned under the **internal revenue laws** . . ."

In **26 U.S.C. § 7604—Enforcement of Summons**, to wit:

> **(a) Jurisdiction of district court.**--If any person is summoned under the **internal
> revenue laws** to appear, to testify, or to produce books, papers, records, or other
> data, the United States district court for the district in which such person **resides**
> or is found shall have jurisdiction by appropriate process to compel such
> attendance, testimony, or production of books, papers, records, or other data.

> **(b) Enforcement.**--Whenever any person summoned under section 6420(e)(2),

6421(g)(2), 6427(j)(2), or **7602** neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony

**B.  Subject Matter of "Internal Revenue Laws" Limited to the District of Columbia and Territories—Plenary Power of Congress.**

The "**Internal Revenue,**" "**Taxation**" or "revenue from Imports" is under the "**public rights**" doctrine under the Plenary Power of Congress in the **District of Columbia or the Territories ONLY**.  This is pronounced in *Kuretski v. C.I.R.*, 755 F.3d 929, 939, 940 (D.C. Cir. 2014), to wit:

> At the same time, the Supreme Court has recognized a "category of cases involving '**public rights**' " that Congress can constitutionally assign to non-Article III tribunals. *Id.* at 2610 (quoting *Northern Pipeline,* 458 U.S. at 67, 102 S.Ct. 2858 (plurality opinion)). The "**public rights**" category comprises disputes that "'**could be conclusively determined by the Executive and Legislative Branches'** " **without judicial intervention.** *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 589, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting *Northern Pipeline,* 458 U.S. at 68, 102 S.Ct. 2858). The "**public rights doctrine** reflects simply a pragmatic understanding that, when **Congress selects a quasi-judicial method of resolving matters**" that could be decided with no judicial review, "the danger of encroaching on the judicial powers is reduced." *Id.*
> Although the precise contours of the "**public rights**" doctrine are not fully formed, *see Stern,* 131 S.Ct. at 2610; *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 51 n. 8, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), it is "**settled**" that the category of **public rights** includes matters of "**internal revenue**" and "**taxation**," at least at the pre-collection stage. *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 450–51 & nn. 8–9, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) (internal quotation marks omitted); *see Crowell v. Benson,* 285 U.S. 22, 50–51, 52 S.Ct. 285, 76 L.Ed. 598 (1932); *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1856). **Congress therefore can constitutionally assign the adjudication of pre-collection tax disputes to non-Article III tribunals.** *See Samuels, Kramer & Co. v. Comm'r,* 930 F.2d 975, 992 (2d Cir.1991) ("The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum."), *abrogated on other grounds by Freytag,* 501 U.S. at 892, 111 S.Ct. 2631.
>
> * * *
>
> *Ibid @ 941,* That statement, if considered in isolation, could be construed to suggest that Tax Court judges exercise Article III powers. But the *Freytag* Court clarified that **"non-Article III tribunals ... exercise the judicial power of the United States," such that "the judicial power of the United States is not limited to the judicial power defined under Article III."** *Id.* at 889, 111 S.Ct.

2631 (citing *Am. Ins. Co. v. Canter,* 26 U.S. (1 Pet.) 511, 546, 7 L.Ed. 242 (1828)). **The Court therefore used the phrase "judicial power" in "an enlarged sense," not in the particular sense employed by Article III.** *See Murray's Lessee,* 59 U.S. at 280 ("**judicial act**" in "**an enlarged sense**" **encompasses "all those administrative duties the performance of which involves an inquiry into the existence of facts and the application to them of rules of law**").

This is well settled that the "Internal Revenue Laws" and the "Taxation," being all of Title 26 of the United States Code, is under the Plenary Power of Congress and the "public rights" doctrine.

## C. Jurisdiction of 26 U.S.C. § 7602–Books and Records

In 26 U.S.C. § 7602 § **(b) Enforcement.**--Whenever any person summoned under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or **7602** neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony. Under § 7602 requires either Nevius has filed a Form 1040 OMB 1545-0074 or there exists a Substitute for Return under 6020(b) in accord with the Chief Counsel Notice **CC-2007-005** signed by Nevius. Neither Exist as Nevius has not signed any Form 1040 or any Substitute for Return under 6020(b).

### a. Essential Elements of 7602.

In 26 U.S.C. § 7602—Examination of books and witness, to wit: (a) Authority to summon, etc.—[**First Essential Element**] For the purpose of ascertaining the correctness of any return **[OR]**, [**Second Essential Element**] making a return where none has been made **[OR]**, [**Third Essential Element**] determining the liability of any person for any internal revenue tax is a *sine qua non* to issue Books and Records Third Party Summons to "individuals."

**b. First Essential Element of 7602.**

Nevius has not filed any Form 1040 OMB 1545-005 and there is no evidence claimed to date of any such Form 1040 signed by Nevius.

**c. Second Essential Element of 7602.**

The **second essential element** is "**making a return** where none has been made," wherein **Internal Revenue Agent Ellis** is attempting to determine the "taxable year" liability of Nevius being "taxable income computed under Subtitle A[6]" presumably by a Substitute for Return under 6020(b). Nevius has not signed any Substitute for Return under 6020(b) which unless signed by Nevius, it would not be recognized if Nevius filed for Bankruptcy.

The Bankruptcy Courts and Bankruptcy Laws are under Article III Jurisdiction only as held in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 51 (1982), to wit:

> (b) **Article III bars Congress from establishing under its Art. I powers legislative courts to exercise jurisdiction over all matters arising under the bankruptcy laws**. The establishment of such courts does not fall within any of the historically recognized situations--**non-Art. III courts of the Territories or of the District of Columbia, courts-martial, and resolution of "public rights" issues--in which the principle of independent adjudication commanded by Art. III does not apply.** The bankruptcy courts do not lie **exclusively outside the States, like the courts of the Territories or of the District of Columbia, or bear any resemblance to courts-martial, nor can the substantive legal rights at issue in the present action--the right to recover contract damages to augment Northern's estate--be deemed "public rights."** There is no persuasive reason in logic, history, or the Constitution, why bankruptcy courts lie beyond the reach of Art. III. Pp. 2867-2874.

> (c) Section 1471 impermissibly removed most, if not all, of the essential attributes of the judicial **power from the Art. III district court and vested those attributes in a non-Art. III adjunct.** *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 and *United States v. Raddatz*, 447 U.S. 667, 100

---

[6] 26 U.S.C. § 7701(a)(23).

S.Ct. 2406, 65 L.Ed.2d 424 distinguished. **Congress does not have the same power to create adjuncts to adjudicate constitutionally recognized rights and state-created rights as it does to adjudicate rights that it creates.**

### **1. Substitute for Return under 26 U.S.C. § 6020(b) Under Bankruptcy Laws Can't Discharge the Liability Unless Signed By the Alleged Taxpayer,** *i.e.,* **Bankruptcy Court Only Under Article III and not in "Public Rights",** *i.e.,* **"District of Columbia," Territories and Possessions.**

When the IRS proceeds to create a Substitute for Return under 26 U.S.C. § 6020(b), even with all three forms as mandated by the Chief Council Notice **CC-2007-005 evidenced in Attachment 3—CC-2007-005 ("A3—CC-2007-005")** using the Form 4549, Form 886-A and the Form 13496 are in **evidence required in 26 U.S.C. § 7491(c),** the Bankruptcy Court will not discharge any "taxable year" liability unless it is **personally signed by the alleged taxpayer**. The issue of "Article III § 2" having force and effect on a citizen in one of the several States within *these* United States (several States) precludes the "public rights" jurisdiction of the Plenary Power of Congress in the District of Colombia, territories and possessions that uses "Laws of Congress" versus the "Laws of the United States" in Article VI of the Constitution of the United States.

In 26 U.S.C. § 6020(b)—Returns prepared for or executed by Secretary "he Secretary may prepare such return, which, **being signed by such person**, may be received by the Secretary as the return of such person." This is evidenced in *In re Wogoman*, 475 B.R. 239-243, 244 (10th Cir. B.A.P. 2012), to wit:

The **hanging paragraph**, which purports to define the term "**return**," provides:

> For purposes of this subsection, the term "**return**" means a **return that satisfies the requirements of applicable nonbankruptcy law** (including **applicable filing requirements**). Such term includes a return prepared pursuant to **section 6020(a)** of the Internal Revenue Code of 1986, or similar State or local law, or **a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue**

**Code of 1986**, or a similar State or local law.  **FN12.**
    **FN12:** 11 U.S.C. § 523(a)(*) (hanging paragraph

Section 6020(a) of the Internal Revenue Code ("IRC") **refers to a return prepared by the IRS with the assistance of the taxpayer, and when signed by the taxpayer**, may be treated as a return filed by the taxpayer. **FN13.**

> **FN13.** Technically, the IRC authorizes the Secretary of the Treasury to prepare the return, which is accomplished through the IRS. Subsection (a) of § 6020, "Returns prepared for or executed by Secretary," provides:
> (a) Preparation of return by Secretary.—If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, **being signed by such person**, may be received by the Secretary as the return of such person.
>
> 26 U.S.C. § 6020(a). Generally speaking, § 6020(a) acts as a "**taxpayer assistance procedure.**" *See* Michael I. Saltzman & Leslie Book, *IRS Practice and Procedure* ¶ 4.02[1][a] (2012). It should be noted that in conjunction with a return prepared under § 6020(a), **the taxpayer typically agrees to immediate assessment and collection of the taxes shown on the return**. See *IRS Chief Counsel Advisory* 200113026, 2001 WL 307745 (Mar. 30, 2001).

Returns are required for a § 7602 Books and Records Inquisition as held in *United States v. National Bank of South Dakota*, 622 F.2d 365, 366, 367 (8th Cir. 1980), to wit:

> Enforcement of similar summonses was recently upheld in *United States v. Hoffman*, No. 79-2019 (8th Cir. April 7, 1980), unpublished, and *United States v. Thomas*, Nos. 79-1978, 1979 (8th Cir. April 7, 1980), unpublished. And the *367 instant summonses clearly **meet the test of relevance that the materials summoned " 'might (throw) light upon' the correctness of the taxpayer's returns.**" *United States v. Freedom Church*, 613 F.2d 316, 321 (1st Cir. 1979); *United States v. Noall*, 587 F.2d 123, 125 (2d Cir. 1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979).

**d. Third Essential Element of § 7602.**

Internal Revenue Agent Ellis is not invested with any Power on the third essential element of § 7602, being "**determining the liability of any person for any internal revenue tax." It is well settled that the know legal duty for any taxable year liability is posited with the courts.**

### 1. Known Legal Duty is a Question of Law for the Courts.

"The existence of a known legal duty owed by a taxpayer is a question of law for the court" for a federal Court arising under Article III, and this was held in *United States. v. Pirro*, 96 F.Supp.2d 279, 283 (D.C. S.D. N.Y. 1999). *Affirmed in U.S. v. Pirro*, 212 F.3d 86 ( 2nd Cir. 2000).

See also *United States. v. Ingredient Tech. Corp.*, 698 F.2d 88 (2nd Cir. 1983).

It would be very confusing to the jury to have opposing opinions of the law admitted into evidence involving a factual question for them to decide and if the tax law is uncertain, the Indictment should be dismissed. This is a question of law for the Court.   This is the pronouncement in the adjudged case of *United States. v. Ingredient Tech. Corp.*, 698 F.2d 88 (2nd Cir. 1983), to wit:

> . . . **it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide.** Indeed, as that dissent points out, the inevitable logic of the majority's decision in Garber is that if **the tax law is uncertain, the indictment should be dismissed. Questions of law are for the court.** United States v. Bronston, 658 F.2d 920, 930 (2d Cir.1981), cert. denied, --- U.S. ----, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982);  Marx & Co. v. Diners Club, Inc., 550 F.2d 505, 509-10 (2d Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

"It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." as pronounced in *Marx & Co. v. Diners Club, Inc.*, 550 F.2d 505, 509-510 (2nd Cir. 1977), *cert denied*, 434 U.S. 861 (1977).  And further *ibid at 510* "(Construction (of a contract) is always a matter of law for the Court.").  See also *United Stats v. Lanni*, 466 F.2d 1102, 1110 (3rd Cir. 1972).  "It is settled that when the law is vague or highly debatable, a defendant-actually or imputedly-lacks the requisite intent to violate it." as held in *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974).  See also *United States. v. Mallas*, 762 F.2d 361 (4th Cir. 1985).

Also *Mallas at* 363, to wit:

Criminal prosecution for the **violation of an unclear duty itself violates the clear constitutional duty of the government to warn citizens whether particular conduct is legal or illegal.** *See generally* Note, Criminal Liability for Evasion of an Uncertain Tax, 81 Col.L.Rev. 1348 (1981). As *Critzer* indicates, this same requirement arises from the rule of 26 U.S.C. ß 7206 that only a "willful" tax evasion is criminal. Willful conduct under ß 7206, which the Supreme Court described in *United States v. Pomponio* as **"voluntary intentional violation of a known duty,"** 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976), **requires that the duty involved must be knowable.** *See also James v. United States,* 366 U.S. 213, 221-222, 81 S.Ct. 1052, 1056-1057, 6 L.Ed.2d 246 (1961). *[Emphasis added]*

"It is perfectly clear, therefore, that if the word "duty," as employed in the [jury] instruction, meant legal duty, then it left a question of law to the determination of the jury, and that was an error." as held in *Pennsylvania Co. v. Frana*, 13 Ill.App. 91, 97 (App. Ct. Ill 1883).

## D.  Tax Court is the ONLY Remedy Initially for "Internal Revenue Laws," Which is the "Public Rights" Doctrine Under Venue and Jurisdiction of The District of Columbia and the Territories.

This further evidenced as the only remedy offered by Congress on the issue of "internal revenue laws" is to file into the "Tax Court," where the "venue' and the "jurisdiction" of the Tax Court is under the "public rights" doctrine' and, this is well-settled that the Tax Court adjudicates "public rights" as evidenced in *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991), to wit:

> The **Tax Court is the classic example of a forum that adjudicates "public rights."** The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum. *Crowell,* 285 U.S. at 50–51, 52 S.Ct. at 292; *Bakelite,* 279 U.S. at 450–51, 49 S.Ct. at 413; *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856).

The Tax Court adjudicates "federal rights" under the "public rights" doctrine as evidenced in *Klien v. United States*, 94 F.Supp.2d 838 (S.D.Mich. 2000) citing *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 992 (2nd Cir. 1991), to wit:

> First, the vast majority of cases cited by the government are decisions by the Tax Court. Despite performing exclusively judicial functions akin to those of an

Article III federal district court (albeit, solely in the **realm of taxation**), the **Tax Court is an Article I court.** *See Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 891–92, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). Tax Court judges lack life tenure; their salaries may be diminished; and they may be removed by the President for cause. *Id.* at 912, 111 S.Ct. 2631 (Scalia, J. concurring). **The Tax Court is a classic example of a congressionally created forum within the executive branch designed to <u>adjudicate "public rights</u>."** *Samuels, Kramer & Co. v. Commissioner of Internal Revenue,* 930 F.2d 975, 991–92 (2d Cir.1991) "Public rights" are: [t]hose rights that arise "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments."

* * * * * *

The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum.

The "public rights" doctrine rests on the premise that **any matters subject to adjudication in Article I forums could have been conclusively determined by the executive or legislative branches in the first instance** ... Given the fact intensive nature of tax disputes, resolution of such claims would ordinarily be left to the executive.

* * * * * *

**[L]egislative courts, such as the Tax Court, share many of the characteristics of administrative agencies. We believe that the work performed by legislative courts and adjudicatory agencies cannot be distinguished. Both are bodies created by Congress under Article I to <u>adjudicate federal rights</u>** and both lack the requisites of Article III status. From the perspective of Article III, there is no difference in constitutional principle between legislative courts and administrative agencies ... Despite several differences in both appearance and operation, their work cannot be functionally or theoretically distinguished.

## E.  United States District Court in the District of Columbia and Territories are Not Limited to Only Limited Jurisdiction Arising Under Article III of the Constitution of the United States.

Of Course if this USDC in the District of Columbia is clothing itself with only the "characteristics" of an Article III in certain situations; and, this same USDC in the District of Columbia can also proceed with administrative or legislative functions in the District of Columbia.

Therefore the USDC in the District of Columbia can proceed adjudicating under the "public rights" doctrine using 28 U.S.C.§ 132; therein **this USDC** in the District of Columbia can proceed with administrative or legislative functions for the enforcement of "internal revenue

laws" of Title 26, which is the ONLY USDC that has "subject matter jurisdiction" of the "internal revenue laws, which is precluded in any USDC in the territorial boundaries of the several States arising under Article III of the Constitution of the United States.

This is pronounced in *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), to wit:

> The distinction between the jurisdiction of this court which is confined to the hearing and decision of cases in the **constitutional sense and that of administrative action and decision, power for which may be conferred upon courts of the District is shown in the case** of *Keller v. Potomac Electric Company*, 261 U. S. 428, 440, 442, 443, (1923). There it is pointed out that, while Congress in its constitutional exercise of exclusive legislation over the District may clothe the courts of the District, not only with the jurisdiction and powers of the federal courts in the several states, but also with such authority as a state might confer on her courts (*Prentis v. Atlantic Coast Line Company*, 211 U. S. 210, 225, 226, (1908)), and **so may vest courts of the District with administrative or legislative functions which are not properly judicial, it may not do so with this court, or any federal court established under article 3 of the Constitution.** Of the jurisdiction of this court, we said, at page 444 of 261 U. S. (43 S. Ct. 449):

> '**Such legislative or administrative jurisdiction, it is well settled, cannot be conferred on this court either directly or by appeal.** The latest and fullest authority upon this point is to be found in the opinion of Mr. Justice Day, speaking for the court in *Muskrat v. United States*, 219 U. S. 346 (1902). The principle there recognized and enforced on reason and authority is that the jurisdiction of this court and of the inferior courts of the United States ordained and established by Congress under and by virtue of the third article of the Constitution is limited to cases and controversies in such form that the judicial power is capable of acting on them, and does not extend to an issue of constitutional law framed by Congress for the purpose of invoking the advice of this court **without real parties or a real case**, or **to administrative or legislative issues or controversies.**

Therefore, as no United District Court within any of the territorial boundaries of the several States can proceed with the "subject matter jurisdiction" concerning "internal revenue laws" as all USDC's all Federal Courts are all very limited jurisdictional arising under Article III of the Constitution of the United States are conclusively denied assuming "subject matter jurisdiction," and it can't be waived and MUST be on the Record.

Nevius is relying upon many decisions of the Supreme Court of the United States on the mandatory issue of "subject matter jurisdiction" must be on the record and can't be waived by any party; and, of many on-point Decisions of the Supreme Court of the Untied States on "subject matter jurisdiction" with one being *Insurance Corp. of Ireland, Ltd, et al., v. Compagnie des Bauxites de Guinee*, 102 S.Ct. 2099, 2014 (1982), to wit:

> **Federal courts are courts of limited jurisdiction.** The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. **Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction.** Again, this reflects the **constitutional source of federal judicial power:** Apart from this Court, that power only exists "**in such inferior Courts as the Congress may from time to time ordain and establish.**" Art. III, § 1.
>
> **Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign.** Certain legal consequences directly follow from this. **For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant,** *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), principles of estoppel do not apply, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951), **and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.** Similarly, a court, including an appellate court, **will raise lack of subject-matter jurisdiction on its own motion.** "**[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.**" *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884), **FN9.**
>
> > **FN9.** A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal. See *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

As the United States District Court in the District of Columbia is the **only** court

The question arises where is the right or privilege of voting arise under: The Constitution of the United States or the constitution of one of the several States?  The answer is found in *United States v. Anthony*, 24 F.Cas. 829, 829, 830 (Cir.Ct. N.D.N.Y. 1873), to wit:

> The thirteenth, fourteenth and fifteenth amendments were designed mainly for the protection of the newly emancipated negroes, but full effect must, nevertheless, be given to the language employed.
>
> * * *
>
> The **right of voting,** or the privilege of voting, is a right or privilege **arising under the constitution of the state**, and not under the constitution of the United States; and second, that a right of the character here involved is not one connected with **citizenship of the United States**.
>
> * * *
>
> [I]f rights of a citizen are thereby violated, they are of that fundamental class, **derived from his position as a citizen of the state, and not those <u>limited rights belonging to him as a citizen of the United States</u>**; and such was the decision in *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823)

In *Kineen v. Wells*, 11 N.E. 916, 918, 919 (Sup.Jud.Ct.Mass. 1887), to wit:

> If the legislature can impose certain restrictions upon one class of voters, and exempt another, what is the limit to its discretion?
>
> * * *
>
> The **right or privilege of voting is a right or privilege arising under the constitution of each state**, and **not under the constitution of the United States.** The voter is entitled to vote in the election of officers of the United States by reason of the fact that he is a voter in the state in which he resides. He exercises this right because he is entitled to by the laws of the state where he offers to exercise it, and not because he is a citizen of the United States. *United States v. Anthony*, 24 F.Cas. 829, 830 (Cir.Ct. N.D.N.Y. 1873)

In *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823), a case the Circuit Court of the United States has described the privileges and immunities of the citizens of the several States in great detail including this excerpt to which some additional protections under fourteenth Amendment were overlaid but the fundamental right of the elective franchise is still posited in the constitution of one of the several States, to wit:

> [M]ay be mentioned as some of the particular privileges and immunities of

adheres to the "characteristics" of an Article III § 2 Court[9] in the issues "Internal Revenue Laws" concerning Nevius.

### b. Internal Revenue Service Has Not Made a Determination That Nevius is a "Taxpayer."

There exists no determination that Nevius is a "taxpayer" by the IRS under 26 CFR § 601.201 that has no "force and effect of law"[10] even if it did exist, being only policy statement."[11]

And further, policy[12] statements do not create any rights or obligations.

---

[9] See *Palmore v. United States*, 411 U.S. 389, 407-409 (1973), *supra*.

[10] *Production Tool Corp. v. Employment and Training Administration, U.S. Dept. of Labor*, 688 F.2d 1161, 1165 (7th Cir. 1982) citing the holdings in *Chrysler v. Brown*, "Legislative rules are said to have the "force and effect of law"-i.e., they are as binding on the courts as any statute enacted by Congress. *Chrysler*, 441 U.S. at 295, 99 S.Ct. at 1714."

[11] *United States v. Lewis*, 1990 WL 11111 (C-CR-89-114), *3 (W.D. N.C. (1990).

[12] *Troy v. Browner*, 120 F.3d 277, 287 (D.C. Cir. 1997) "The policy does not impose rights or obligation or bind the agency to a particular result."; *Preminger v. Secretary of Veterans Affairs*, 632 F.3d 1345,1356 (Fed. Cir. 2011); *Chemical Mfrs. Ass'n v. E.P.A.*, 26 F.Supp. 2d 180, 185 (D.D.of Col. 1998) "The policy's plain language also establishes that it **does** "**not** command anyone to do anything or to refrain from doing anything," **does** "**not** subject anyone to any civil or criminal liability," and **does not**" create ... legal **rights or obligations**."; *Bellarno Intern. Ltd. V. Food and Drug Admin.*, 678 F.Supp. 410, 412 (E.D. N.Y. 1988) "Thus ... a statement of **policy** may not have a present effect: 'a "general statement of **policy**" is one that **does not** impose any **rights or obligations**.' "*American Bus Association v. United States*, 627 F.2d 525, 529 (D.C.Cir.1980) (quoting *Texaco, Inc. v. FPC*, 412 F.2d 740, 744 (3rd Cir.1969))." *Nader v. Butterfield*, 373 F.Supp. 1175, 1178 (D. D. of C. 1974) "General statements of **policy** under § **553(b)(A)** encompass agency action which does not impose or alter rights or obligations of affected persons. *Texaco Inc. v. Federal Power Commission*, 412 F.2d 740, 744 (3rd Cir. 1969)."; *Hormel Foods Corp. v. U.S. Dept. of Agriculture*, 808 F.Supp. 234, 243 (D. D. of Col. 2011); *Borg-Warner Protective Services Corp. v. U.S. E.E.O.C.*, 81 F.Supp.2d 20, 27-28 (D. D. of Col. 2000) "The court stated that "[t]he policy's plain language ... establishes that it does 'not command anyone to do anything or to refrain from doing anything,' does 'not subject anyone to any civil or criminal liability,' and does not 'create ... legal rights or obligations.' " *Id.* at 185 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 118 S.Ct. 1665, 1670, 140 L.Ed.2d 921 (1998)."; *Hall v. E.E.O.C.*, 456 F.Supp. 695, 702 (D. N.D.Cal. 1978) "[T]he agency's specific **policies** and procedures; however, the Manual **does not** determine any **rights or obligations** of parties before the EEOC."; *State of S.C. ex rel. Patrick v. Block*, 558 F.Supp. 1004, 1012 (D. S.C. 1983) "While a general statement

A Court arising under Article III § 2 is to be an "adversarial"[13] forum for all issues concerning Nevius; wherein "inquisitorial"[14] evidence has no standing to proceed to support "**clear and convincing**" evidence standard mandated in all civil cases.

## 1. Expert Affidavits and Declarations are Considerate Evidence.

(1) **Expert Affidavits are Evidence**;[15] and, (2) The **Expert Affidavits Must be Considered**[16]; and, (3) "It by no means authorizes **trial on affidavits**, Credibility determinations, weighing of the evidence, and the drawing of legitimate inferences from

---

of police does not impose right or obligations."; *Aboulhosn v. Merrill Lynch, Pierce, Fenner & Smith*, 940 F.Supp.2d 1203, 1223 (C.D. Cal. 2013);

[13] In *Miller v. Fenton*, 374 U.S. 104, 110 (1985) "[T]he court's analysis has consistently been animated by the view that "ours is a accusatorial and not an inquisitorial system. *Roberts v. Richmond*, 385 U.S. 534, 541 (1961)." See also *In re United Air Lines, Inc.*, 438 F.3d 720, 738 (7th Cir. 2006); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 357 (2006); *United States v. Loughner*, 672 F.3d 731, 773 (9th Cir. 2012); *Wright v. District of Columbia*, 799 F.Supp.2d 1, (D. Dist. of Columbia 2011)

[14] In *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991) "What makes a system **adversarial rather than inquisitorial** is not the presence of counsel, much less the presence of counsel where the defendant has not requested it; but rather, the presence of a judge who does not (as an **inquisitor does) conduct the factual and legal investigation himself,** but instead decides on the basis of facts and arguments pro and con adduced by the parties."

[15] *United States v. Byfield*, 391 F.3d 277, 281 (D.C. Cir. 2004) "[O]nce Byfield is given an opportunity to present expert evidence in support of his contention, expert affidavits from the government may be enough to refute his claims."; *Deukmejian v. Nuclear Regulatory Com'n*, 751 F.2d 1287, 1320 (D.C. Cir. 1984) "Alleging the existence of "significant new evidence," petitioners proffered (1) expert affidavits and testimony."; *Wright v. District of Columbia*, 799 F.Supp.2d 1, 6 (D. Dist. of Columbia 2011) "Plaintiff has presented **evidence, in the form of two expert affidavits.**"; *Stewart v. Rubin*, 948 F.Supp. 1077, 1096 (D. Dist. of Columbia 1996).

[16] *Kaiser v. Skakta*, 40 P.3d 800, 805 (Alaska 2002); *Kendal v. State, Div. of Corrections*, 692 P.2d 953, 955 (1984); *Willoya v. State. Dept. of Corrections*, 53 P.3d 1115, 1124 (Alaska 2002); *Gerber v. Juneau Barlett Merorial Hosp.*, 2 P.3d 74, 78 (Alaska 2000) "Because Kendal presented no evidence, such as expert affidavits, to rebut this conclusion, we upheld the grant of summary judgment FN 24 (omitted);" *Lewis v. State, Dept. of Corrections*, 139 P.3d 1266, 1271 (Alaska 2006); *Hinsberger v. State*, 53 P.3d 568, 572 (Alaska 2002).

the **facts are jury functions, not those of a judge,** whether he is ruling on a motion for summary judgment or for a directed verdict."[17] (4) the Holdings (***stare decisis* and precedents**) is a ***sine qua non*** as to some material fact.[18]   There is NO affidavits, expert affidavits  or declarations on the issues of Nevius being a "taxpayer;" or, that the IRS and/or Ellis followed all of the inquisitorial administrative procedures.

### c. Clear and Convincing Evidence.

One man's word against another does not rise to "clear and convincing" evidence.  In *In re McDonough*, 296 N.W.2d 648, 694 (Sup.Ct.Minn. 1980), to wit:

> We are unable to accept the conclusion of Judge Stahler and the Board that Judge McDonough **clearly and convincingly** made the calls. **That high standard of proof usually would require more than one man's word against another**, especially where, as here, mistake cannot be ruled out.

See also *Lampkin-Asam v. Miami Daily News, Inc.*, 408 So.2d 666, 670 (Dist.Ct.App.3rd Dist. Fla. (1982).

To authorize a reformation for mistake, the evidence must be clear and conclusive,

---

[17] Ibid, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Reeves v. Sanderson Plumbing Products, Inc.,530 U.S. 133, 135, 151 (2000);  Hunt v. Cromartle, 526 U.S. 541, 553 (1999); Lytie v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1990).
[18] *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) "A genuine dispute of **material fact** means that "evidence is such that a jury could return a verdict for the moving party" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).";
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) "As to materially, the substantive law will identify **which facts are material.**  Only disputes over facts that might affect the outcome of the suit under the governing law will properly precluded the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. * * * More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, **if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.**"
*State of California ex rel. California Dept. of Toxic Substances Control v. Campell*, 319 F.3d 1161, 1166 (9th Cir. 2003) "Moreover, "[c]redibility determination, the **weighing of the evidence**, and **the drawing of legitimate inferences from the facts are jury functions**, not those of a judge, [when] he is ruling on a motion for summary judgment. *Ibid Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)"

*Davidson v. Greer,* 35 Tenn. (3 Sneed) 384 (1855); clear, certain, and satisfactory, *Bailey v.*

*Bailey,* 27 Tenn. (Humph) 230 (1847); clear, convincing, and satisfactory, *Jones v. Jones,* 150

Tenn. 554, 266 S.W. 110 (1925); clear, cogent, and convincing, *Whitaker v. Moore,* 14

Tenn.App. 204 (1938); full, clear, and unequivocal, *Perry v. Pearson,* 20 Tenn. (1 Humph) 431

(1839).

> In *Herbert v. Lando*, 598 F.Supp. 1178, 1186 (S.D.N.Y. 1984), to wit:

> Proof of actual malice is a more stringent burden. It requires a public figure
> plaintiff to demonstrate actual malice by "**clear and convincing** evidence." Under
> the "**clear and convincing**" burden, "a mere preponderance of the evidence is not
> enough." *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir.1977). The
> "**clear and convincing**" standard is "intermediate between the normal
> 'preponderance of the evidence' civil standard and the 'beyond the reasonable
> doubt' criminal standard," *Yiamouyiannis v. Consumers Union of the U.S.,*
> *Inc.,* 619 F.2d 932, 940 (2d Cir.1980), quoting *Nader v. de Toledano,* 408 A.2d
> 31, 49 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761
> (1980).
> To authorize a reformation for mistake, the evidence must be clear and
> conclusive, *Davidson v. Greer,* 35 Tenn. (3 Sneed) 384 (1855); clear, certain, and
> satisfactory, *Bailey v. Bailey,* 27 Tenn. (Humph) 230 (1847); clear, convincing,
> and satisfactory, *Jones v. Jones,* 150 Tenn. 554, 266 S.W. 110 (1925); clear,
> cogent, and convincing, *Whitaker v. Moore,* 14 Tenn.App. 204 (1938); full, clear,
> and unequivocal, *Perry v. Pearson,* 20 Tenn. (1 Humph) 431 (1839).

> In *Matter of Anchorage Boat Sales, Inc*., 29 B.R. 275, 279 (E.D.N.Y. 1983), to wit:

> In deciding a **factual issue** wherein, the evidence is limited
> to **one man's word** against that of another, the credibility of either side is
> dependent upon the consistency of his story as applied within the framework of
> the **undisputed facts.**

Nevius has a secured right to have a "clear and convincing" evidence standard in all

courts of the United States arising under Article III § 2 and even in the USDC—DC that has the

"characteristics" of an Article III § 2 Court being somehow being the only venue that can

exercise the Article III § 1, Article III § 2 and Article 1 § 8 Clause

And further, what makes our system adversarial is NOT by the judge's

interrogations of witnesses as found in *Dietrz v. Blould*, 794 F.3d 1093,1102, 1103 (9th

Cir. 2015), to wit:

> Our system of justice is an adversarial one. "What makes a system adversarial rather than inquisitorial is not the presence of counsel," but "the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the bases of facts and arguments pro and con adduced by the parties." *McNeil v. Wisconsin,* 501 U.S. 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Consistent with this principle, our court has never required district court judges develop—**by interrogation of witnesses—the record on which they render judgments; instead, we require district court judges to make specific findings based on the evidence that the parties place in the record.**

> And further on our adversarial system versus an inquisitorial one is found

in *United States v. Bendolph*, 409 F.3d 155, 172 (3rd Cir. 2005), to wit:

> Underlying the *Scott* and *Nardi* decisions is the rule that generally it is not appropriate for a court to *sua sponte* raise non-jurisdictional defenses not raised by the parties. *See Acosta v. Artuz,* 221 F.3d 117, 122 (2d Cir.2000) ("Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties."); *cf. Zelson v. Thomforde,* 412 F.2d 56, 58 (3d Cir.1969) (**holding that a court may not raise the defense of lack of personal jurisdiction—a non-jurisdictional defense because it does not concern the power of the court to entertain the suit—once the defendant has waived the issue by appearing**). This rule exists because ours is an adversarial system, which relies on advocacy by trained counsel. *Cf. United States v. Burke,* 504 U.S. 229, 246, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring) ("The rule that points of law not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, **distinguishes our adversary system of justice from the inquisitorial one**."). In an adversarial system, it is not for the courts to bring to light the best arguments for either side; that responsibility is left to the parties themselves. *McNeil v. Wisconsin,* 501 U.S. 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) ("What makes a system adversarial rather than inquisitorial is ... the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con *adduced by the parties.*") (emphasis added). As the Supreme Court has explained, "[t]he determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

**d. Subornation of Perjury**

The IRS and and Michelle Ellis ("Ellis"), being an "**Internal Revenue Agent**" as

evidenced in **A1— First National Bank of Omaha;**  and, as evidenced in **A2— PNC Bank** are

using  unlawfully and illegally tactics of *subornation of perjury*[19] against Nevius to get him to

sign "implied-in-law"[20] contracts such as the Form 1040 OMB 1545-0074 or by subversive

means of to obtain the books and records via **A1— First National Bank of Omaha;** and, via

**A2— PNC Bank** that a "known legal duty"[21] will arise upon Nevius for Subtitle A—Income

Taxes; or Subtitle B—Gifts;" or Excises Tax chapters 41, 42, 43 or 44.[22]

And further, **A1— First National Bank of Omaha;** and, as evidenced in **A2— PNC**

**Bank** it states "for examination the following books, records, papers, an **officer of the Internal**

---

[19] 18 U.S.C. § 1622—Subornation of perjury.  See *United States v. Gross*, 511 F.2d 910, 910, 915 (3rd Cir. 1975) "The Court of Appeals, Aldisert, Circuit Judge, held that the words '**any perjury**' in statute defining an offense of subornation of perjury include . . . before grand jury or court." *Ibid.* @ 915 "Whoever procures another to commit any perjury is guilty of subornation of perjury . . .' The express language of this statute embraces the procuring of another to commit '**any perjury.**'"

[20] *Skillo v. United States*, 68 Fed.Cl. 734, 735, 742, 743 (Fed.Ct.Cl. 2005), "*Ibid @ 734*, First, plaintiffs explain that defendant **breached a contract** allegedly entered into when plaintiffs filed their **Form 1040 joint tax return in 2001.**

*Ibid @ 742, 743*, The court agrees with defendant. Indeed, "the Court of Claims' jurisdiction with respect to **contracts extends only to actual contracts, either express or implied in fact; it does not reach claims on contracts implied in law.**" *Hatzlach Supply Co. v. United States,* 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (citing, *inter alia, Alabama v. United States,* 282 U.S. 502, 507, 51 S.Ct. 225, 75 L.Ed. 492 (1931)). "[T]o establish **jurisdiction based on an implied contract**, an appellant must establish the **elements of a contract, including consideration, mutuality of consent, and definiteness of terms.**" *743 Girling Health Sys., Inc. v. United States,* 949 F.2d 1145, 1147 (Fed.Cir.1991) (rejecting a taxpayer's contention that the instructions to an IRS form constituted an implied contract between IRS and the taxpayer). Moreover, "[t]he **requirements of mutuality of intent and the lack of ambiguity in offer and acceptance** are the **same for an implied-in-fact contract** as for an **express contract.**" *Russell Corp. v. United States,* 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976).

[21] "The existence of a known legal duty owed by a taxpayer is a question of law for the court", and this was held in *United States. v. Pirro*, 96 F.Supp.2d 279, 283 (D.C. S.D. N.Y. 1999). *Affirmed in U.S. v. Pirro*, 212 F.3d 86 ( 2nd Cir. 2000). See also *United States. v. Ingredient Tech. Corp.*, 698 F.2d 88 (2nd Cir. 1983).

[22] See 26 U.S.C. § 6211—Definition of a deficiency; and, 26 U.S.C. § 6212—Notice of Deficiency.

---

Revenue Service;" and not " **Internal Revenue Agent**." An "Officer of the Internal Revenue

Service" is not the same as an "Agent of the Internal Revenue Service."

### e.  "Offense" in the Summons A1— First National Bank of Omaha and A2— PNC Bank

The IRS and Ellis are attempting to obtain by the Summons evidence in support of a

criminal charge as in the **A1— First National Bank of Omaha** and **A2— PNC Bank** it states

"inquiring into any **offense** connected with the **administration or enforcement** of the internal

revenue laws." "Offense" a taken as a crime or misdemeanor; *i.e.*, a breach of the criminal laws.

See *People v. Brenta*, 220 P. 447 (Dist.Ct.App. Ca. 1923); *State v. Hirsch*, 100 A. 330 (Sup.Ct.

Vermont 1917); *Ex parte Brady*, 157 N.E. 59 (Sup.Ct. Ohio 1927); "The word "willfully" used

in connection with this **offense** means deliberately, and intentionally, and without justifiable

excuse, or with the wrongful purpose of deliberately intending not to file a return which the

defendant she [he] knew should have filed, in order to prevent the Government from knowing the

extent of, and knowing that facts material to, the determining of her [his] tax liability * * *

FN2—this **offense** means a voluntary, intentional violation of a known legal duty" in *United*

*States v. Pohlman*, 522 F.2d 974, 975 (3ʳᵈ Cir. 1975): See also *United States v. Gorman*, 393

F.2d 209, 213 FN3 (7ᵗʰ Cir. 1968); *United States v. Karsky*, 610 F.2d 548, 549 FN4 (8ᵗʰ Cir.

1979); *United States v. Delfino*, 510 F.3d 468, 472 (4ᵗʰ Cir. 2007).

The purpose of the Power of Inquisition is to "inquire" only and not "accuse" for an

"offense;" **wherein the first the essential element that Nevius is a "taxpayer" must be**

**established, which does not exist.** This  is pronounced in *United States v. O'Shea*, 662

F.Supp.2d 535, 539 (S.D.W.Va. 2009) "[T]he IRS possesses the **"power of inquisition"** **to**

**investigate** possible unpaid tax liabilities . . . the purpose . . . **is not to accuse, but to inquire** . . .

unless the [I am a] **taxpayer**."

## J.  Standing Arising under Article III.

Standing arising under Article III is limited to actual cases and controversies which must

be disclosed on the record as evidence in the very recent case of *American Civil Liberties Union*

*v. Clapper*, 785 F.3d 787, 800 (2nd Cir. 2015 [May 7th])

> We recognize that "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the **constitutional limitation of federal-court jurisdiction to actual cases or controversies.**' *"Clapper v. Amnesty Int'l USA,* 133 S.Ct. 1138, 1146 (2013), quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006) (alteration in original). In order to meet that requirement, plaintiffs must, among other things, **establish that they have standing to sue.** *Raines v. Byrd,* 521 U.S. 811, 818 (1997). "Standing under Article III of the Constitution **requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.**" *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010); *see also Amnesty Int'l,* 133 S.Ct. at 1147 (collecting cases). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Amnesty Int'l,* 133 S.Ct. at 1147, quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) (emphasis in original). We remain mindful that the "'standing inquiry has been especially rigorous when reaching the merits of [a] dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional'."

## II.  Conclusion.

Therefore as the USDC—DC has subject matter jurisdiction of "internal revenue laws" of

Article I § 8 Clause 18 in under the Plenary Power of Congress[23] concurrent with Article III § 1

and the "characteristics" of Article III § 2[24] for Nevius that must be in record, which Nevius

Plead.

---

[23] See *Palmore v. United States*, 411 U.S. 389, 407-409 (1973), *supra*; *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), *supra*.

[24] *Palmore v. United States*, 411 U.S. 389, 407-409 (1973), *supra*; *Postum Cereal Co. Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1926), *supra*.

And further, this USDC—DC then has the "subject matter jurisdiction" to quash all of the Summons concerning Nevius as plead, *supra*, where if Nevius filed in the "district courts" where these various entities are allegedly "found," then Nevius would be denied Due Process of Law, *i.e.*, the Law of the Land as there are no federal courts of limited jurisdiction having subject matter jurisdiction of the "internal revenue laws" that are posited within the territorial boundaries of the several States arising under Article III § 2 of the Constitution for citizens of Missouri.

And further, the Incorporation Documents of "First National Bank of Omaha" and "PNC Bank" are under the Plenary Power of Congress regulation and control, wherein the place of their "incorporation" is the correct "venue" of said banks, which has not been disclosed.

And further, Nevius is not under the "public rights" doctrine[25] and this is no evidence, which must be provided in an adversarial forum of Cases in Law and Equity arising under Article III § 2 for standing and "clear and convincing" evidence standards.

And further, in *United States v. Powell*, 379 U.S. 48, 57-58 (1964) In order to establish a prima facie case, IRS need only make a "minimal" showing that:

(1) **the investigation will be conducted pursuant to a legitimate purpose.** which has not been met, to wit;

a. Nevius must be determined to be a "taxpayer" on the record, which does not exist; and

b. There is no disclosure of what type of tax being "investigated" as to Subtitle A—Income       Taxes Part 1, Subtitle B—Gifts Part 2 or Excise Taxes chapters 41, 42, 43, or 44.

Remembering that Subtitle C—Employment Taxes and **Wages** (see 26 U.S.C. § 3401-

---

[25] See Sworn Affidavit in the public record in Attachment **A4—Cert. of Status,** which this Court shall take judicial Notice.

3406) are not subject to 26 U.S.C. § 6211—Deficiency defined and 26 U.S.C. § 6212—
Notice of Deficiency, *i.e.*, subject to "investigation" under the power of inquisition.

c.  As Ellis is presumed to be competent and a highly trained "Internal Revenue Agent,"
competent to exercise the "power of inquisition;" therein, but no "known legal duty" is
cited under the "laws of the United States" or using the "Internal Revenue Laws" for any
"investigation" of any "taxable year" liability under 26 U.S.C. § 7701(a)(23) "Taxable
year.--The term **"taxable year" means** the calendar year, or the fiscal year ending during
such calendar year, upon the basis of which the **taxable income is computed under
subtitle A**."

d.  As Ellis is presumed to be competent and a highly trained "Internal Revenue Agent,"
competent to be empowered to exercise the "power of inquisition;"  but, no "withholding
agent" for "**ANY TAX**" has been identified under the "Internal Revenue Laws" codified
in 26 U.S.C. § 7701(a)(16) "Withholding agent.--The term "**withholding agent" means**
any person **required to deduct and withhold any tax** under the provisions of section
1441, 1442, 1443, or 1461."

e.  As Ellis is presumed to be competent and a highly trained "Internal Revenue Agent,"
competent to be empowered with the "power of inquisition;" but Ellis has not met the
minimal inquisitorial standard of  "burden of proof" in the "Internal Revenue Laws" of
26 U.S.C. § 7491 to identify Nevius as one of the following in 26 U.S.C § 7701(a)(16), to wit:

>  (1) subject to  26 U.S.C. § 1441 (as a non-resident alien); or,

>  (2) subject to 26 U.S.C. § 1442 (as a foreign corporation); or,

>  (3)  subject to 26 U.S.C. § 1443 (as a foreign organization); or,

(4) subject to 26 U.S.C. § 1461 would be the "person" that would be held harmless for "required to deduct and withhold any tax" are a *sine qua non* to "investigate" Nevius for "any tax" liability. ***Impotentia excusat legem.*** (The impossibility of doing what is required by the law excuses form performance).[26] L*ex non cogit ad impossibilia.* (The law does now compel the doing of impossibilities).[27]

f. As Ellis is presumed to be competent and a highly trained "Internal Revenue Agent," competent to be empowered with the "power of inquisition;" but Ellis has not provided Nevius with the Inquisitorial documents of Chief Counsel Wilkinson being **A3—CC- 2007- 005.**

g. As Ellis is presumed to be competent and a highly trained "Internal Revenue Agent," competent to be empowered with the "power of inquisition;" Ellis has not provided any documents or evidence that would make Nevius subject to the "public rights" doctrine that is the venue for the IRS's Inquisitorial processes using the "Tax Court of the United States."

(2) **the inquiry may be relevant to the purpose,** wherein Ellis is by *subornation of perjury* using "inquisitorial" proceedings and "inquisitorial" processes to intimidate, coerce and punish Nevius to including but not limited to signing an implied-in-law contracts being the Form

---

[26] *Akins v. Adams*, 164 S.W. 603, 608 (St. Louis Ct. Appeals 1914); *Strother v. Barrow*, 151 S.W. 960, 964 (Sup. Ct Mo. 1912).

[27] *Com v. Stitler*, 22 Pa.D.&C.2d 240, 245, 246 (Pa.Com.Pl. 1959); *Somerset Importer, Ltd. V. United States*, 14 Cust.Ct. 44, 50 (1945); *Dalzell v. Kane*, 183 A. 782, 784, (Sup.Ct. Pa. 1936); *Trimmer v. Carlton*, 296 S.W. 1070, 1082 (Sup.Ct. Tx. 1927); *Qualey v. Scott*, 28 Pa.D. 605, 608 (U.S. Cust.App. 1919); *United States v. Shallus*, 2 U.S.Cust.App. 332, 334 (Cust. App. 1911); *United States v. Illinois. R. Co.*, 170 F. 542, 550 (6th Cir. 1909); *Barton v. City of New Haven*, 52 A. 403, 405 (Sup.Ct Errors Conn.1902); *Commonwealth ex rel. Attorney General v. Griest*, 46 A. 505, 511 (Sup.Ct. Pa. 1900). *State v. Van Wye*, 37 S.W. 938, 941 (Sup.Ct. Mo. 1896); *Rollins v. Lake County*, 34 F. 845, 852 (Cir.Ct. D. Colo. 1888); *Potter v. Douglas County*, 87 Mo 239 (Sup.Ct. Mo 1885); *Kinney v. Zimpleman*, 36 Tex 554, 570 (Sup.Ct. Tx. 1871).

punish Nevius to including but not limited to signing an implied-in-law contracts being the Form 1040 OMB 1545-0074, which Nevius would be providing false evidence under penalty of perjury under his signature; and, provide funds to the IRS with no documents, Laws of the United States or "substantive regulations"[28] supporting any "known legal duty." Nevius has a secured right to have an adversarial Court of the United States and invites Ellis provide any evidence that is material and will support any "clear and convincing" evidence standard.

Ellis has not provided one scintilla of evidence as what the "relevance" of investigation of any books and records documents in the banks have to any "known legal duty" for any "taxable year" liability to the IRS.

Is Ellis making an *ipse dixit* determination subject to 5 U.S.C. § 551(4)—Rule making that there is something in the bank records is relevant to "taxable income" and "taxable year" as defined in the "internal revenue laws," which would establish some means establishing a "substantive rule" binding and with no discretion devolving upon Nevius for a "taxable year" liability to the IRS. See *Texas. v. United States*, 1-14-cv-254 S.D. Texas—86 F.Supp.3d 1591 (S.D. Tex. 2015), upheld in 809 F.3d 134 (5th Cir. 2015) now on Writ of Cert. to the Supreme Court of the United States in 15-674.

(3) **the information sought is not already within the IRS's possession**, wherein the inquisitorial administrative record has not been provided to Nevius; and,

(4) **the administrative steps required by the Code have been followed**, wherein Nevius has not been provided any Declaration by Ellis or anyone else the administrative inquisitorial "internal revenue laws" have been followed, but in upcoming adversarial USDC— DC, that will be determined when Ellis is put under Oath and also deposed prior to any Bench

---

[28] *Chrysler v Brown*, 441 U.S. 281 (1979).

Trial

Signature,

## III.  Declaration of Bryon Burton Nevius

Bryon Burton Nevius Declares pursuant to 28 U.S.C. § 1746:

1.  My true name is Bryon Burton Nevius.

2.  I am a "citizen of Missouri."

3.  I am not a "citizen of the United States" as evidenced in **A4—Cert. of Status,** *infra.,* and **A-5—Voter**.

4.  The State of Missouri has accepted by right of suffrage to vote as a "citizen of Missouri," in the elections for public officers and Officers of the United States including the President of the United States in the upcoming federal election as evidenced by **A5—Voter.**

5.  I declare that all of the facts in this Petition, *supra,* are true and correct.

6.  I declare that the all of the facts in the **A4—Cert. of Status** are true and correct.

I Declare under penalty of perjury that the foregoing is true and correct.

Executed on 30th day of March, 2016,

Signature.

## IV.  Certificate of Service

I certify that a true and correct copy of this Motion to Quash Summons will be served by certified U.S. Mail upon the following parties with a copy of the Summons

United States District Court
Clerk of Court, Angela D. Caesar
333 Constitution Avenue N.W.
Washington, District of Columbia 20001
Mailed overnight service on 3-30-2016


U.S. Attorney for District of Columbia
Channing D. Phillips
555 4th Street NW
Washington, District of Columbia 20001

USPS Certified Mail # 7015 0640 0004 0294 9177


**U.S. Department of Justice**
Loretta E. Lynch, Attorney General of United States
950 Pennsylvania Avenue, NW
Washington, District of Columbic 20530-0001

USPS Certified Mail #7015 0640 0004 0294 9184


**Michelle Ellis, Internal Revenue Agent**
Internal Revenue Service
3702 West Truman Blvd Suite 113
Jefferson City, Missouri 65109

USPS Certified Mail # 7015 0640 0004 0294 9146


First National Bank of Omaha
1620 Dodge Street
 Stop Code 68197
 Omaha, NE 68197


USPS Certified Mail # 7015 0640 0004 0294 9153


PNC Bank
4100 West 150th Street
Attn: Records Department
Cleveland, OH 44135


USPS Certified Mail # 7015 0640 0004 0294 9160

Date:  March 30th, 2016



# Summons

In the matter of  Bryon B. Nevius  21355 Highway 179 Jamestown, MO  65046

Internal Revenue Service (Division):  Small Business/Self Employed

Industry/Area (name or number):  Midwest Area

Periods:  Calendar years ending December 31, 2010 through December 31, 2014

## The Commissioner of Internal Revenue

To:  First National Bank of Omaha

At:  1620 Dodge Street Stop Code 68197 Omaha, NE  68197

You are hereby summoned and required to appear before  Michelle Ellis or her designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear:**

3702 West Truman Blvd Suite 113 Jefferson City, MO  65109    573-469-0031

**Place and time for appearance at**  Mail To: Internal Revenue Service Attn: Michelle Ellis (address list above)

| | |
|---|---|
| **IRS** | on the ___11th___ day of ___April___ 2016 at ___9:00___ o'clock ___a___ m. |
| | Issued under authority of the Internal Revenue Code this __11th__ day of ___March___ 2016 |
| Department of the Treasury **Internal Revenue Service** | *Michelle Ellis*       Internal Revenue Agent |
| **www.irs.gov** | Signer       Title |
| Form 2039 (Rev. 10-2010) Catalog Number 21405J | Signature of      applicable)      Group Manager      Title |

**Part C** — to be given to noticee

**Attachment 1 - page 1 of 6**

## Sec. 7609. Special procedures for third-party summons

(a) Notice-

(1) In general - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence

(3) Nature of summons - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons

(b) Right to intervene, right to proceeding to quash -

(1) Intervention - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604

(2) Proceeding to quash -

(A) In general - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2)  In any such proceeding, the Secretary may seek to compel compliance with the summons

(B) Requirement of notice to person summoned and to Secretary - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1)

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A)  Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding)

(c) Summons to which section applies -

(1) In general - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identify of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause; or

(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).

(4) Records - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash

(e) Suspension of Statute of Limitations. -

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending

(2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response

(f) Additional requirements in the case of a John Doe summons. -
Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that -

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons;

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources

(g) Special exception for certain summonses -
A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records

(h) Jurisdiction of distinct court; etc. -

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed

(2) Special rule for proceedings under subsections (f) and (g) - The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits

(i) Duty of summoned party -

(1) Recordkeeper must assemble records and be prepared to produce records.- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure

(4) Notice of suspension of statute of limitations in the case of a John Doe summons - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f)

(j) Use of summons not required -
Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602

Form **2039** (Rev. 10-2010)

**Attachment 1 - page 4 of 6**

# ATTACHMENT TO SUMMONS / SUBPOENA

Issued to:  First National Bank
In the matter of:  Bryon B. Nevius
Address:  21355 Highway 179 Jamestown, MO  65046
Periods:  Calendar years ending December 31, 2010 through December 31, 2014

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, administrator, and/or beneficiary.  Records may pertain to an individual, sole proprietor with DBA, member of LLC, officer and/or board member of corporation, partner of general partnership, limited partnership and/or trust.  This request for records includes, but is not limited to:

1. **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

2. **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

3. **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.

4. **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually, records of any liens, loan correspondence files, and internal bank memoranda.

5. **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check).

6. **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

7. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

8. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other

1

**Attachment 1 - page 5 of 6**

## ATTACHMENT TO SUMMONS / SUBPOENA

accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

9. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

10. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

11. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

Personal appearance is not necessary if the required records are received by mail by the date specified in the summons. In addition to the record layout described below, a cover letter is required to identify the taxpayer case, the summoned witness, whether the response is incomplete, and if certain requested records do not exist.

RECORD FORMAT: Records are requested in the form of compact disk (CD), digital versatile disc (DVD), or hard drive, whenever available. A record layout for the data is also requested. The record layout should specify the type of information provided and actual electronic file name. Each type of information should be recorded in a separate document; however, multiple dates may be included in the same file. The record layout should be placed in the same order as the information listed above.



# Summons

In the matter of  Bryon B. Nevius  21355 Highway 179 Jamestown, MO  65046

Internal Revenue Service (Division):  Small Business/Self Employed

Industry/Area (name or number):  Midwest Area

Periods:  Calendar years ending December 31, 2010 through December 31, 2014

## The Commissioner of Internal Revenue

To: PNC Bank

At: 4100 West 150th Street Attn: Records Department Cleveland, OH  44135

You are hereby summoned and required to appear before  Michelle Ellis or her designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear:**

3702 West Truman Blvd Suite 113 Jefferson City, MO  65109    573-469-0031

**Place and time for appearance at**  Mail To: Internal Revenue Service Attn: Michelle Ellis (address list above)

# IRS

| | |
|---|---|
| on the ___22nd___ day of ___April___ 2016 at ___9:00___ o'clock ___a___ m. | |
| Issued under authority of the Internal Revenue Code this ___23rd___ day of ___March___, ___2016___ | |

Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev  10-2010)
Catalog Number 21405J

*Michelle Ellis*

Sign                        icer

Signature of                    applicable)

Internal Revenue Agent
                        Title

Group Manager
                        Title

**Part C —**  to be given to noticee

ATTACHMENT 2 - PAGE 1 OF 1

**Attachment 2 - page 1 of 6**

**To:** Bryon B. Nevius

**Address:** 21355 Highway 179 Jamestown, MO 65046

**Date:** March 23, 2016

Enclosed is a copy of a summons served by the IRS to examine records made or kept by, or to request testimony from, the person summoned. If you object to the summons, you are permitted to file a lawsuit in the United States district court in the form of a petition to quash the summons in order to contest the merits of the summons.

If you are the taxpayer, see important information below on the suspensions of your periods of limitation under I.R.C. section 7609(e)(1) and (e)(2).

## General Directions

1. You must file your petition to quash in the United States district court for the district where the person summoned resides or is found.

2. You must file your petition within 20 days from the date of this notice and pay a filing fee as may be required by the clerk of the court.

3. You must comply with the Federal Rules of Civil Procedure and local rules of the United States district court.

## Instructions for Preparing Petition to Quash

1. Entitle your petition "Petition to Quash Summons."

2. Name the person or entity to whom this notice is directed as the petitioner.

3. Name the United States as the respondent.

4. State the basis for the court's jurisdiction, as required by Federal Rule of Civil Procedure. See Internal Revenue Code Section 7609(h).

5. State the name and address of the person or entity to whom this notice is directed and state that the records or testimony sought by the summons relate to that person or entity.

6. Identify and attach a copy of the summons.



Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

7. State in detail every legal argument supporting the relief requested in your petition. See Federal Rules of Civil Procedure. Note that in some courts you may be required to support your request for relief by a sworn declaration or affidavit supporting any issue you wish to contest.

8. Your petition must be signed as required by Federal Rule of Civil Procedure 11.

9. Your petition must be served upon the appropriate parties, including the United States, as required by Federal Rule of Civil Procedure 4.

10. At the same time you file your petition with the court, you must mail a copy of your petition by certified or registered mail to the person summoned and to the IRS. Mail the copy for the IRS to the officer whose name and address are shown on the face of this summons. See 7609(b)(2)(B).

The court will decide whether the person summoned should be required to comply with the summons request.

## Suspension of Periods of Limitation

If you are the taxpayer being examined/investigated by this summons and you file a petition to quash the summons (or if you intervene in any suit concerning the enforcement of this summons), your periods of limitation for assessment of tax liabilities and for criminal prosecutions will be suspended pursuant to I.R.C. section 7609(e)(1) for the tax periods to which the summons relates. Such suspension will be effective while any proceeding (or appeal) with respect to the summons is pending. Your periods of limitation will also be suspended under section 7609(e)(2) if the summoned person fails to fully respond to this summons for 6 months. The suspension under section 7609(e)(2) will begin 6 months after the summons is served and will continue until the summoned person finally resolves the obligation to produce the summoned information. You can contact the IRS officer identified on the summons for information concerning the suspension under section 7609(e)(2). If you contact the IRS officer for this purpose, please provide the following information: (1) your name, address, home and work telephone numbers and any convenient time you can be contacted and (2) a copy of the summons or a description of it that includes the date it was issued, the name of the IRS employee who issued it, and the name of the summoned person.

The relevant provisions of the Internal Revenue Code are enclosed with this notice. If you have any questions, please contact the Internal Revenue Service officer before whom the person summoned is to appear. The officer's name and telephone number are shown on the summons

**Part D — to be given to noticee**



# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry, and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice or contact of third parties -

(1) General Notice. - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made

(2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer

(3) Exceptions - This subsection shall not apply-

(A) to any contact which the taxpayer has authorized,

(B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

(C) with respect to any pending criminal investigation

(d) No administrative summons when there is Justice Department referral.

(1) Limitation of authority - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice Department referral in effect - For purposes of this subsection-

(A) In general. - A Justice Department referral is in effect with respect to any person if-

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

(i) the Attorney General notifies the Secretary, in writing, that -

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii)

(3) Taxable years, etc., treated separately - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income

---

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2) 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers -

(1) In general - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper

(2) Third party record keeper - For purposes of paragraph (1), the term third-party recordkeeper means -

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A))

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U S C 1681 a )

(C) Any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1534 (15 U S C 78c(a)(4)),

(E) any attorney

(F) any accountant

(G) any barter exchange (as defined in section 6045(c)(3));

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof

(I) any enrolled agent, and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which source code relates

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify or to produce books, papers records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance testimony, or production of books, papers, records, or other data

(b) Enforcement - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

★ ★ ★ ★

## Sec. 7605. Time and place of examination

(a) Time and place - The time and place of examination pursuant to the provisions of section 6420(e)(2) 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall not be less than 10 days from the date of the summons

## Sec. 7610. Fees and costs for witnesses

(a) In general - The Secretary shall by regulations establish the rates and conditions under which payment may be made of -

(1) fees and mileage to persons who are summoned to appear before the Secretary, and

(2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if -

(1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

(2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such

(c) Summons to which section applies - This section applies with respect to any summons authorized under section 6420(e)(2) 6421 (g)(2), 6427(j)(2), or 7602

## Sec. 7210. Failure to obey summons

Any person who being duly summoned to appear to testify or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(a)(2), 6421(g)(2), 6427(j)(2), 7602, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1 000, or imprisoned not more than 1 year, or both, together with costs of prosecution

Form **2039** (Rev. 10-2010)

## Sec. 7609. Special procedures for third-party summons

(a) Notice-
(1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in section 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons
(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence
(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons

(b) Right to intervene, right to proceeding to quash -
(1) Intervention - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604
(2) Proceeding to quash -
(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.
(B) Requirement of notice to person summoned and to Secretary - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1)
(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding)

(c) Summons to which section applies -
(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.
(2) Exceptions. - This section shall not apply to any summons
(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;
(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept.
(C) issued solely to determine the identity of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);
(D) issued in aid of the collection of-
(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or
(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause; or
(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws and
(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g)
(4) Records - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -
(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or
(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash

(e) Suspension of Statute of Limitations. -
(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending
(2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-
(A) beginning on the date which is 6 months after the service of such summons, and
(B) ending with the final resolution of such response

(f) Additional requirements in the case of a John Doe summons. -
Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that -
(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources

(g) Special exception for certain summonses. -
A summons is described in this subsection if, upon petition by the Secretary, the court determines on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying or production of records

(h) Jurisdiction of district court; etc -
(1) Jurisdiction - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed
(2) Special rule for proceedings under subsections (f) and (g) - The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits

(i) Duty of summoned party -
(1) Recordkeeper must assemble records and be prepared to produce records.- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined
(2) Secretary may give summoned party certificate - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.
(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure
(4) Notice of suspension of statute of limitations in the case of a John Doe summons - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f)

(j) Use of summons not required -
Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602

Form **2039** (Rev. 10-2010)

**Attachment 2 - page 4 of 6**

# ATTACHMENT TO SUMMONS / SUBPOENA

Issued to:  PNC Bank
In the matter of:  Bryon B Nevius
Address:  21355 Highway 179 Jamestown, MO  65046
Periods:  Calendar years ending December 31, 2010 through December 31, 2014

For the periods specified above, please furnish all books, papers, records, and other data concerning all accounts in which the above-named individual(s) is identified as having any ownership interests, signatory privileges, rights to make withdrawals, or for which the above-named individual(s) is shown as the trustee, co-signer, guardian, custodian, administrator, and/or beneficiary.  Records may pertain to an individual, sole proprietor with DBA (**Vitality Plus, Midwest Health Supply**) member of LLC, officer and/or board member of corporation, partner of general partnership, limited partnership and/or trust.  This request for records includes, but is not limited to:

1. **PRIVATE BANKING** including all agreements, contracts, records, books, ledgers, and other documents relating to all of the "Private Banking" agreements and relationships.

2. **SAVINGS ACCOUNT RECORDS** including signature cards, ledger cards or records showing dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, and checks issued for withdrawals, Forms 1099 issued, and exempt status documentation.

3. **CHECKING ACCOUNT RECORDS** including signature cards, bank statements, deposit slips, checks deposited, checks drawn on the account, records of all debit and credit memos, Forms 1099 issued, and exempt status documentation.

4. **LOAN RECORDS** including applications, financial statements, loan collateral, credit, and background investigations, loan agreements, notes or mortgages, settlement sheets, contracts, checks issued for loans, repayment records, including records showing the date, amount and method of repayment, checks used to repay loans and records showing the total amount of discount or interest paid annually. records of any liens, loan correspondence files, and internal bank memoranda.

5. **SAFE DEPOSIT BOX RECORDS** including contracts, access records, and records of rental fees paid showing the date, amount, and method of payment (cash or check).

6. **CERTIFICATES OF DEPOSIT, MONEY MARKET CERTIFICATES, AND RETIREMENT ACCOUNTS** including applications, actual instruments(s), records of purchases and redemptions, checks issued on redemption, checks used to purchase certificates, any correspondence and any Forms 1099 issued, records showing the annual interest paid or accumulated, the dates of payment or dates interest was earned, checks issued for interest payments.

7. **U.S. TREASURY NOTES AND BILLS** including all records of the purchase of U.S. Treasury Bills and Notes and/or subsequent sale of such bills or notes, including interest paid, checks used for the purchase or sale of the notes and bills, Forms 1099 issued, checks issued for interest payments, records of interest paid or accumulated showing the dates and amount of interest paid or accumulated.

1

# ATTACHMENT TO SUMMONS / SUBPOENA

8. **STOCKS AND BONDS** including all agreements, contracts, applications for account, signature cards, mutual fund accounts, commodity accounts, margin accounts, or other accounts. Such records include cash receipts, confirmation slips, securities delivered receipts, statements of account, notifications of purchase or sale, representative's stock record, account executive worksheets, correspondence, ledger sheets, cash in slips, buy and sell slips, or other records of these transactions. Documentation and correspondence about stock, municipal or corporate bond transactions, and financial counseling on any of the above.

9. **CREDIT CARD RECORDS** including the above named individual(s)' application, signature card, any credit or background investigations conducted, correspondence about the credit card accounts, monthly billing statements, individual charge invoices, repayment records showing the dates, amounts, and method (cash or check) of repayment, checks used to make repayments (front and back).

10. **PURCHASES OF BANK CHECKS** including cashier's, teller's, or traveler's check records, or money order records including the check register, file copies of the checks or money orders, records showing the date and source of payment for such checks or money orders.

11. **OTHER RECORDS** including records of Currency Transaction Reports (Form 4789), certified checks, wire transfers, or collections, letters of credit, bonds and securities purchased through your bank, savings bond transactions and investment accounts. Such records include those that show the date and amount of the transaction, method (cash or check) and source of payment, destination, recipient, instruments, and statements of transactions.

Personal appearance is not necessary if the required records are received by mail by the date specified in the summons. In addition to the record layout described below, a cover letter is required to identify the taxpayer case, the summoned witness, whether the response is incomplete, and if certain requested records do not exist.

RECORD FORMAT: Records are requested in the form of compact disk (CD), digital versatile disc (DVD), or hard drive, whenever available. A record layout for the data is also requested. The record layout should specify the type of information provided and actual electronic file name. Each type of information should be recorded in a separate document; however, multiple dates may be included in the same file. The record layout should be placed in the same order as the information listed above.

---

IRS CCN CC-2007-005, 2007 WL 425479

IRS CCN

Internal Revenue Service (I.R.S.)

**Chief Counsel Notice**

**CC-2007-005**

February 4, 2007
**Cancel Date:** Effective until further notice

SUBJECT: LITIGATING POSITION FOR RETURNS PREPARED UNDER
SECTION 6020(B)

**Purpose**

This Notice discusses procedures that should be followed in Tax Court cases in which the section 6651(a)(2) addition to tax has been determined on the basis of a substitute for return. This Notice also provides the Service's litigating position with respect to the section 6651(a)(2) addition to tax, as stated in Temp. Treas. Reg. § 301.6020-1T.

The temporary regulation describes a change in the Service's practices for preparing substitute income tax returns under section 6020(b). Because the procedures described in the regulation satisfy the requirements of section 6020(b), our office will defend the determination of the section 6651(a)(2) addition to tax for failure to pay the amount of tax reported due on a return in cases that follow the prescribed procedures.

**It is essential that section 6020(b) returns be placed in evidence if the Tax Court is to find that the Service has met its burden of production under section 7491(c) and sustain the Service's addition to tax determination. In cases brought by nonfilers, the Tax Court will deny the section 6651(a)(2) addition to tax if a valid section 6020(b) return is not entered into the record. *See, Wheeler v. Commissioner*, 127 T.C. 14 (2006); *Guthrie v. Commissioner*, T.C. Memo. 2006-81; and *Holmes v. Commissioner*, T.C. Memo. 2006-80.** This Notice updates and modifies CC-2004-009 (Jan. 22, 2004), which updated and modified CC-2003-019 (June 12, 2003).

**Background**

Section 6651(g) provides that a "return" that the Secretary prepares under section 6020(b) functions as a return filed by the taxpayer for purposes of determining the failure-to-pay

addition to tax under section 6651(a)(2). The Tax Court has, on several occasions, held that the Service did not prepare returns that sufficed to impose the section 6651(a)(2) addition to tax under section 6020(b). *Cabirac v. Commissioner*, 120 T.C. 163 (2003), *aff'd in an unpublished opinion*, No. 03-3157 (3d Cir. Feb. 10, 2004); *Rhodes v. Commissioner*, T.C. Memo. 2003-133; *Spurlock v. Commissioner*, T.C. Memo. 2003-124. These returns were determined to be insufficient because they did not provide a basis on which to calculate the section 6651(a)(2) addition to tax and were not subscribed in accordance with section 6020(b)(2). Based on these adverse opinions, the Service changed its procedures, as detailed in CC-2004-009, and later in Temp. Treas. Reg. § 301.6020-1T.

**Under section 7491(c), the Service has the burden of production for contested penalties and additions to tax. To meet this burden with respect to the section 6651(a)(2) addition to tax, the Service must offer as evidence the section 6020(b) return showing the unpaid tax as the basis on which the addition to tax is calculated. If the section 6020(b) return is not offered, respondent will not meet its burden of production, and the Tax Court will not sustain the addition to tax. *See*, *Wheeler v. Commissioner*, 127 T.C. 14 (2006); *Guthrie v. Commissioner*, T.C. Memo. 2006-81; and *Holmes v. Commissioner*, T.C. Memo. 2006-80.**

Section 6020(b) Procedures

Temp. Treas. Reg. § 301.6020-1T provides that a document (or set of documents) **signed by an authorized internal revenue officer or employee is a return under section 6020(b) if the document (or set of documents) (1) identifies the taxpayer by name and taxpayer identification number, (2) contains sufficient information from which to compute the taxpayer's tax liability, and (3) purports to be a return. A Form 13496, IRC Section 6020(b) Certification, or its automated counterpart, the IRC Section 6020(b) ASFR Certification, both described below, can be used to meet these requirements.** A Form 13496, an ASFR Certification, or any other form that an authorized officer or employee signs and uses to identify a document (or set of documents) as a section 6020(b) return is, along with the identified document(s), a valid section 6020(b) return if the combined material contains all of the necessary information required by the temporary regulation to qualify as a section 6020(b) return.

The regulation also addresses the subscription requirement. The Service prepares and signs section 6020(b) returns either by hand or through automated means. To accommodate automated signatures, the regulation provides that the name and title of an internal revenue officer or employee appearing on a section 6020(b) return suffices as a subscription adopting the document as the taxpayer's return, whether the officer's or employee's name or title is handwritten, stamped, typed, printed, or otherwise mechanically affixed to the document, so long as the name was placed on the document

to signify that the employee or officer adopted the document as a return for the taxpayer. The subscription, as well as the accompanying document or set of documents, may be in written or electronic form.

## Form 13496

As described in **IRM 20.1.2.1.4(9),** to prepare the return under section 6020(b), the Service **attaches a completed Form 13496 to other documents**, which, when combined, satisfy each of the elements of a valid section 6020(b) return. Specifically, the package of documents consists of (1) **the Form 13496, signed and dated; (2) Form 4549, Income Tax Examination Changes**; and (3) **Form 886-A, Explanation of Items. The latter two forms, which must be generated on or before the date the Form 13496 was signed, contain the information necessary to calculate the taxpayer's liability for the period and the amount of the failure-to-pay addition to tax.**

Form 13496 was revised in October 2005 to eliminate, as part of a valid section 6020(b) return, the requirement that the tax return form or transcript of account form be attached to the Form 13496. **A copy of the current Form 13496 (rev. 10-2005) is attached to this Notice.**

## ASFR Certification

**In lieu of the Form 13496 package** generally used by revenue agents or revenue officers, the Service may create an Automated Substitute for Return at certain campuses. In the ASFR process, an automated system generates a **Letter 2566, 30 Day Proposed Assessment (SFR-01) 910 SC/CG, which includes the taxpayer's name, taxpayer identification number, and sufficient information to compute the taxpayer's tax liability**. Contemporaneous with the generation of the Letter 2566, the Service's automated system electronically creates and stores a certification (the IRC Section 6020(b) ASFR Certification) certifying that the electronic data in the taxpayer's account on IDRS constitutes a valid section 6020(b) return as of that date. The certification includes the electronic signature of the Service employee authorized to sign the section 6020(b) return upon its creation. The resulting ASFR identifies the taxpayer's name, address, TIN, and computed liability for the tax period in question. Like the Form 13496 package, the automated package of certified information is a return under section 6020(b). A copy of a printout of the IRC Section 6020(b) ASFR Certification is attached to this Notice. If a printout of the ASFR certification or required documentation is missing from the administrative file, a copy must be obtained by contacting a Tax Examining Assistant at (978) 691-6729, (512) 460-1283, or (559) 454-6598. Personnel at any of these numbers can assist with information on any ASFR, regardless of its originating campus.

**Litigating Position**

**Notice CC-2004-009 provides that this office will defend the section 6651(a)(2) addition to tax in cases in which the addition to tax is supported by a Form 13496 package conforming to the new procedures. The section 6651(a)(2) addition to tax should be defended in cases in which we can introduce into evidence a properly completed Form 13496 package as described in this Notice. In cases in which the former Form 13496 (prior to the current revised form, rev. 4-2005) was used to create the 6020(b) return and the appropriate tax return form or transcript of account is not attached, the section 6651(a)(2) addition to tax should be conceded.**

In addition, the addition to tax in cases of an ASFR Certification package meeting the requirements described herein and dated on or after July 18, 2005, the effective date of Temp. Treas. Reg. § 301.6020-1T, should not be conceded. **If, however, the Service has not prepared a Form 13496 or ASFR Certification package, the Office of Chief Counsel will not defend a document as constituting a section 6020(b) return in cases with facts that do not closely parallel those described in** *Millsap v. Commissioner***, 91 T.C. 926 (1988),** *acq. in result in part*, 1991-2 C.B. 1. **Accordingly, the section 6651(a)(2) addition to tax will be conceded when the Service has not prepared, as a return, a document that (1) identifies the taxpayer, (2) provides a basis for the taxpayer's tax computation, and (3) is signed by a Service employee delegated the authority to sign section 6020(b) returns**. The defense of any document that potentially meets these conditions must be coordinated with Branch 2, Administrative Provisions & Judicial Practice Division.

**As stated above, the section 6020(b) return must be placed into evidence to satisfy the Service's burden of production under section 7491(c).** The section 6020(b) return may be introduced in a number of ways. **The simplest way is by stipulation of the parties, and, if necessary, through a motion to compel stipulation pursuant to T. C. Rule 91(f). If a motion for summary judgment or other dispositive motion is filed, the section 6020(b) return should accompany the motion as an exhibit to an affidavit or declaration authenticating the section 6020(b) return. At trial, the section 6020(b) return may be offered into evidence through a witness who is qualified to testify that it was made and kept in the course of the Service's regularly conducted business activities. In the alternative, the return may be introduced as a record of a regularly conducted activity under Fed.R. Evid. 803(6) without a witness through an affidavit or declaration of the custodian or other qualified person (***e.g.***, a revenue agent who can explain how the record was made) prepared pursuant to the requirements of Fed. R. Evid. 902(11).** Notice of intent to use this procedure and access to the affidavit or declaration and underlying **record are required to give the opposing party an opportunity to test the adequacy of the foundation prior to trial.** *See Clough v. Commissioner*, 119 T.C. 183 (2002); *Spurlock v. Commissioner*, T.C. Memo. 2003-124.

**Finally, it should be ascertained as soon as possible after a case has been filed whether a valid section 6020(b) return exists, always keeping in mind the requirements for signing pleadings under T.C. Rule 33(b). If no valid return exists, the court should be advised of this fact at the earliest opportunity, and in all events at the very latest in the pretrial memorandum.**

Deviations from these procedures must be approved in advance by Division Counsel and the Associate Chief Counsel (Procedure & Administration). For further guidance on section 6020(b) returns, please contact Branch 2, Administrative Provisions & Judicial Practice Division, at (202) 622-4940. For questions about introducing proof of section 6020(b) returns into evidence, contact Branch 3, Administrative Provisions & Judicial Practice Division, at (202) 622-7950.

_____ /s/ _____
Deborah A. Butler
Associate Chief Counsel
(Procedure & Administration)

Attachments:
**Form 13496**

**ASFR Certification**

| **IRC Section 6020(b) Certification** | **Total pages certified as valid section 6020(b) return** | **Tax year** |
|---|---|---|
| Name of taxpayer | SSN / EIN | |

Address of taxpayer *(Number, Street, City or Town, State, ZIP code)*

**Certification**

The officer of the IRS identified below, authorized by Delegation Order 182, certifies the

attached pages constitute a valid return under section 6020(b). This return consists of the following items:

1. **Form 4549**, Income Tax Examination Changes or equivalent;

2. **Form 886-A,** Explanation of Items, appropriate issue lead sheet or similar form;

3. This certification *(Form 13496)*.

Pursuant to section 6651(g)(2), this certification, with attachments, shall be treated as the return filed by the taxpayer for purposes of determining the amount of the additions to tax under paragraphs (2) and (3) of section 6651(a).

## IRS Authorization Data

Employee name          Title        Office        ID number

**Signature**                                          Date *(mmddyyyy)*

Form **13496** (Rev. 10-2005) Catalog Number 37538J publish.no.irs.gov Department of the Treasury-**Internal Revenue Service**

## IRC Section 6020(b) ASFR Certification

Taxpayer Name: _____
Address: _____

SSN: _____ Tax Year: _____

The officer of the IRS identified below, authorized by Servicewide Delegation Order 5-2, certifies that he or she intends the electronic data contained as part of the taxpayer's account, and identified below, to constitute a valid return under section 6020(b). This

data includes:

1. Taxpayer's name, address, tax identification number,

2. A computation of the taxpayer's tax liability for the tax period in question, and

3. The electronic version of this form with the electronic signature of the officer identified below.

This certification is created and stored electronically upon the creation of a Letter 2566, "30 Day Proposed Assessment (SFR-01) 910 SC/CG".

Pursuant to section 6651(g)(2), this certification, and the data identified above, shall be treated as the return filed by the taxpayer for purposes of determining the amount of the additions to tax under paragraphs (2) and (3) of section 6651(a).

## IRS AUTHORIZATION DATA

Employee Name                Title        Office        ID Number

Signature [insert name of person delegated authority to sign a        Date
section 6020(b) return who intends the data to be a section
6020(b) return]

IRS CCN CC-2007-005, 2007 WL 425479

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

MONITEAU COUNTY, CALIFORNIA MO  $36.00
MICHELE HIGGINS, RECORDER OF DEEDS

06/03/2015   #2015-1042
11:40:00AM        1 OF 5

STATE OF MISSOURI
COUNTY OF MONITEAU } SS

I, Michele A. Higgins, Circuit Clerk & Recorder of Deeds of Moniteau County, Missouri, hereby certify that the above and foregoing is a full true and correct copy of *CERTIFICATE OF POLITICAL STATUS CITIZEN STATUS & ALLEGIANCE # 2015-1042* as fully as the same remains of record in my said office.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of my said office this _3rd_ day of _JUNE_, _2015_

Michele Higgins
Circuit Clerk, Recorder of Deeds    by _____ Deputy Clerk

TITLE OF DOCUMENT: CERTIFICATE OF POLITCAL STATUS, CITIZEN STATUS & ALLEGIANCE

DATE OF DOCUMENT: JUNE 3, 2015

GRANTOR – BRYAN B. NEVIUS

GRANTEE – BRYAN B. NEVIUS

MONTEAU COUNTY, CALIFORNIA MO  $55.00        06/03/2015  #2015-1042
MICHELE FIGGINS, RECORDER OF DEEDS          11:40:00AM      2 OF 5

# *The United States of America*

**CERTIFICATE OF POLITICAL STATUS, CITIZEN STATUS AND ALLEGIANCE**
**STATE OF Missouri    ) ss.**
**The United States of America )**

**Date:** June 3, 2015  **Personal description of the Holder of this Certificate of Political Status, Citizen Status and Allegiance:**

**True name** – Bryan Burton Nevius; **Date of Natural Birth** – August 16, 1954; **Location of Natural Birth** – Bloomington, Illinois; **Complexion** - white; **Race** – Caucasian;  **Color of eyes** – Blue; **Color of hair** – Light Brown/Gray; **Height** – 6 ft. 4 in.; **Weight** – 213 lbs.; **Visible distinctive marks** – none; **Marital status** – Never Married; **Nationality and Political Status** - Illinoisan, a native of the several States; **Citizen status**: white citizen; and, American citizen;

 and, citizen of the United States of America; and, Natural Born Native and citizen of the foreign state of Missouri domiciled in the territorial boundaries of Missouri, currently a citizen of Missouri and a qualified elector of Missouri. I under oath certify that the facts herein are true and correct under the penalties of perjury and that the photograph affixed hereto is a likeness of me.

I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, State or sovereignty, of which I have been a subject or citizen, including any allegiance to or to be clothed with the fictional status of a "citizen of the United States" as a misnomer declared in 14 Stat. 27 codified in 42 U.S.C. §§§ 1981, 1982 and 1988 by Congress with said "citizen of the United States" memorialized in the Fourteenth Amendment having no direct access to the Bill of Rights Amendments One through Eight of the Constitution of the United States; and, with the Bill of Rights one though eight being "incorporated" at the discretion of the Courts of the United States into the fictional "citizen of the United States." Take Notice of the Fact that a "citizen of the United States" domiciled within the District of Columbia is NOT subject to the Fourteenth Amendment, but is a "qualified elector" as evidenced in DC ST § 1-1001.02(2)(B) clothed by and with the direct protections of the Bill of Rights Amendments one through eight.

And further, I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity and any such use of the status of a "citizen of the United States" under the Plenary Power of Congress using "Acts of Congress" and/or "Laws of Congress" as follows:

MONTEREY COUNTY, CALIFORNIA MO  $36.00        06/03/2015   #2015-1042
MICHELE HIGGINS, RECORDER OF DEEDS            11:40:00AM     3 OF 3

# *The United States of America*

by and though using adhesion contracts, and/or by and though using the "public rights" doctrine of accepting some benefit(s); and/or, by and though using "implied-in-law contracts; and/or, by and through any means that I have accepted some benefit, *i.e.*, "That the United States, when it creates rights [benefits] against itself, is under no obligation to provide a remedy in the courts" (*United States v.* Babcock, 250 U.S. 328, 331 (1919) being any Court of the United States arising under Article III of the Constitution of the United States exercising the judicial Power of the United States in all Cases in Law and Equity with the only exceptions clothed under the law of necessity; and/or, that any State when it creates rights [benefits] against itself, is under no obligation to provide a remedy in a constitutional courts of one of the several States, with the only exceptions clothed under the law of necessity.

And further, I renounce, rescind my signature and abjure to all of the following: all adhesion contracts and documents known or unknown; and, all implied-in-law contracts and documents known or unknown, all "public rights" doctrine contracts and documents known or unknown; and, all other contracts, agreements and documents that would in any way attach or subject me by any means known or unknown with the only exception being under the Law of Necessity.

And further Congress may vest the Courts of the District of Columbia with administrative or legislative functions, which are not properly judicial, but it may not do so with any Federal Court established arising under Article III of the Constitution of the United States either directly or by appeal including any District Court of the United States, any United States District Court, any Circuit Court of Appeals and the Supreme Court of the United States. *Postum Cereal Co, Inc. v. California Fig Nut Co.*, 272 U.S. 693, 700-701 (1927).

And further, The plenary Power of Congress in the "District of Columbia" is evidenced by "Acts of Congress," "Laws of Congress" or "laws of the United States of America" including by not limited to the "Internal Revenue" Taxation of the National Government that is lawfully and legally confined within the District of Columbia under the Plenary Power of Congress.

And further, I further renounce, rescind my signature and abjure to a venue and jurisdiction not clothed within a constitutional court of one of the several States exercising the judicial Power of one of the several States with me unknowing waiving my unalienable rights secured in a particular constitution of whatever one of the several States I am domiciled with the only exception being under the Law of Necessity.

Certificate of Political Status, Citizenship and Allegiances          Page 2 of 4

MONITEAU COUNTY, CALIFORNIA NO  $26.00
MICHELE HIGGINS, RECORDER OF DEEDS                    06/03/2015  #2015-1042
                                                      11:40:00AM     4 OF 5

# *The United States of America*

And further, I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity of the following: all regulations promulgated or enforced by all agencies of the "headless fourth branch of government" and "administrative state; and, all federal agencies especially those knowingly or unknowingly that are "independent agencies" or "independent establishments," and, all state agencies by and though all forms of grants, cooperative agreements, memorandums of understanding, agreements and documents known or unknown to me including but not limited the State Plans that are inextricably intertwined with federal agencies and federal regulations that are not "substantive regulations," *i.e.*, "legislative rules" as held in *Chrysler v. Brown*, 441 U.S. 281 (1979); and, only under the laws of necessity would I be subject to any such regulation(s) unless they are identified having the "force and effect of law" as a "substantive regulation," *i.e.*, a "legislative rule" in strict compliance with the Administrative Procedure Act of 1946 codified in 5 U.S.C. chapters 5-9; and, specifically identified in the "proposed rule" published in the Federal Register that said regulation(s) is in compliance with 5 U.S.C. § 553(b); and, specifically identified in the "final rule" published in the Federal Register stating compliance with 5 U.S.C. 553(b)(c)(d) and in compliance with 1 CFR § 21.40, 1 CFR § 21.41 and 1 CFR 21.43.

And further, that I have not knowingly or intentionally waived or surrendered any of my unalienable rights and birthright to any of the above, which is secured in this constitutional Republic founding documents including the Declaration of Independence, The Articles of Confederation, the Constitution of the United States and the constitution of one of the several States of this Union of States that I am currently domiciled; and, that I will support and defend the Constitution of the United States and Laws of the United States as amended by the qualified Electors of the several States against all enemies, either foreign or domestic; and, that I will support and defend the constitution the one of the several State as amended by the qualified Electors of the citizens of that particular one of the several States that I am currently domiciled against all enemies foreign and domestic; and, that I will bear true faith and allegiance to the Constitution of the United States and the constitution of the particular one of the several States that I am domiciled; and, that I take this obligation freely, without any mental reservation or purpose of evasion, so help me God.

MONITEAU COUNTY, CALIFORNIA MO  $56.00                    06/03/2015   #2015-1042
MICHELE HIGGINS, RECORDER OF DEEDS                        11:40:00AM      5 OF 5

# *The United States of America*

(Complete and true signature of holder, Bryan Burton Nevius)

Sworn and subscribed before me on June 3, 2015, being a Notary Public in and for the State of Missouri.

My Commission expires on ___Nov 7, 2015___.

Signature of Notary Public

[SEAL]

BETHANY M. PETHAN
Notary Public, Notary Seal
State of Missouri
Moniteau County
Commission # 11398332
My Commission Expires November 07, 2015

Certificate of Political Status, Citizen Status and Allegiance                    Page 4 of 4

# MISSOURI VOTER REGISTRATION APPLICATION

Use this application to:
1. Register to vote in any election in Missouri.
2. Register to vote when you move from one jurisdiction (St. Louis City, Kansas City, or any county) to another jurisdiction (St. Louis City, Kansas City, or any county) within Missouri.
3. Change the address on a current voter registration when you move within a jurisdiction.
4. Change the name on a current voter registration.

**Other Information:**
1. You must be 18 years of age by the day of a particular election to be eligible to vote in that election.
2. If mailed, this form must be postmarked by the 4th Wednesday preceding an election to be eligible to vote in that election. If delivered in person, it must be received in the office of the election authority by the 4th Wednesday preceding an election. (See reverse for election calendar.)
3. Submitting this application to an individual other than the election authority does not insure timely voter registration.
4. After the election authority receives your voter registration application, you will be sent confirmation within 7 business days. If you do not receive confirmation, contact the election authority.
5. If you wish to serve as an election judge on election day please contact your local election authority and mark the box at the bottom of this form.
6. Optional—if registering by mail for the first time, please submit a copy of one of the following forms of identification: current or valid photo ID, current utility bill, bank statement, government check, paycheck or other government document that shows your name and address, birth certificate, Native American tribal document or other proof of United States citizenship. (You will be required to present identification when you vote.)

Completing this form (All information is required unless indicated as optional).

**Boxes 1 and 2 -- Citizen and Age Requirements**
Federal Law requires voter registration applicants to answer these two questions

**Box 3 -- Type of Application**
Check appropriate box if this is a new registration or if you are changing a name or address on your current voter registration.

**Box 4 -- Name**
Put in this box your full name (Last, First, Middle). DO NOT use nicknames or initals. For name changes, Box 12 should contain your old name.

**Box 5 -- Home Address**
List your home address. DO NOT put your mailing address if it differs from your home address.

**Box 6 -- Mailing Address**
If you get your mail at an address other than your home address in Box 5, put that address here in this box.

**Box 7 -- Driver's License Number**
Required for registration unless you do not have a Driver's License. (§115.158, RSMo.) If you do not have a Driver's License, leave blank.

**Box 8 -- Last Four Digits of Social Security Number**
Required for registration unless you do not have a Social Security Number. (§115.155, RSMo. §115.158, RSMo.) If you do not have a Social Security Number, leave blank

**Box 9 -- Date of Birth**
Place your date of birth in this box (Month, Day, Year). DO NOT USE TODAY'S DATE!

**Box 10 -- Place of Birth (Optional)**
List your place of birth (city/county/state)

**Box 11 -- Daytime Phone Number (Optional)**
Please list a number of which the election authority may contact you for clarification of information

**Box 12 -- Last Voter Registration Information**
If you are currently registered, please list the name and address of your last registration including county and state

**Box 13 -- Signature**
Review the information. If you meet the requirements and all is correct, sign your full name or make your mark and print today's date.

**Box 14 -- Rural Voters**
If you live in a rural area without a street address, please supply information which may help in placing you in the proper voting district.

---

**YOUR APPLICATION WILL BE CONFIRMED BY MAIL WITHIN SEVEN (7) BUSINESS DAYS OF ITS RECEIPT BY THE ELECTION AUTHORITY. PLEASE CONTACT THE ELECTION AUTHORITY IF YOU DO NOT RECEIVE NOTIFICATION.**

(DETACH HERE - KEEP TOP PORTION FOR YOUR RECORDS) This card is not proof of registration.

# MISSOURI VOTER REGISTRATION APPLICATION

USE PEN - PLEASE PRINT CLEARLY

| 1 | ARE YOU A CITIZEN OF THE UNITED STATES OF AMERICA? [X] YES [ ] NO | 2 | WILL YOU BE 18 YEARS OF AGE ON OR BEFORE ELECTION DAY? [X] YES [ ] NO |

**If you checked no in response to either of the above questions, do not complete this form.**

| 3 | [X] NEW REGISTRATION [ ] ADDRESS CHANGE [ ] NAME CHANGE | FOR OFFICE USE ONLY REGISTRATION NO. |

| 4 | LAST NAME: NEVIUS | FIRST NAME: BRYAN | MIDDLE NAME: B | SUFFIX (JR, II, ETC.) | [X] MALE [ ] FEMALE |

| 5 | ADDRESS WHERE YOU LIVE (HOUSE NO. STREET APT. NO. OR RURAL ROUTE AND BOX -NO PO BOXES): 21355 HWY 179 | CITY: JAMESTOWN | COUNTY: Moniteau | ZIP CODE: 65046 |

| 6 | ADDRESS WHERE YOU GET YOUR MAIL (REQUIRED IF DIFFERENT FROM #5 ABOVE) | CITY | STATE: MO | ZIP CODE |

| 7 | DRIVER'S LICENSE NUMBER (IF YOU DO NOT HAVE A DRIVER'S LICENSE, PLEASE LEAVE BLANK) | 8 | LAST 4 DIGITS OF SOCIAL SECURITY NUMBER (IF YOU DO NOT HAVE A SOCIAL SECURITY NUMBER, PLEASE LEAVE BLANK): 7658 |

| 9 | DATE OF BIRTH (MM/DD/YYYY): 8/16/1954 | 10 | PLACE OF BIRTH (OPTIONAL): Outside Fed. U.S. | 11 | DAYTIME PHONE NO. (OPTIONAL) |

| 12 | NAME AND ADDRESS ON LAST VOTER REGISTRATION
NAME _____
ADDRESS _____
CITY _____ STATE _____
COUNTY _____
If currently registered in another state or county please complete this box | 13 | I hereby certify that I am a citizen of Missouri _____ and a resident in the state of Missouri, I am at least seventeen and one half years of age. I have not been adjudged incapacitated by any court of law If I have been convicted of a felony or a misdemeanor connected with the right of suffrage, I have had the voting disabilities resulting from such conviction removed pursuant to law. I swear under penalty of perjury that all statements made on this card are true to the best of my knowledge and belief. I understand that if I register to vote knowing that I am not legally entitled to register, I am committing a class one (1) election offense and may be punished by imprisonment of not more than five years or by a fine of between two thousand five hundred dollars and ten thousand dollars or by both such imprisonment and fine.
*Notice: See Public Record Filing 32015-1842 filed on 03/03/2015 in Moniteau County, Missouri |

| 14 | RURAL VOTERS: COMPLETE THIS SECTION IF YOU LIVE OUTSIDE THE CITY LIMITS OF ANY CITY.
I live _____ miles ____ (N S E or W) of _____ (Landmark or junction)
Section, Township and range _____
My neighbors are _____ |

Date _____   Signature _____

[ ] Check here if you are interested in working as an Election Judge    Warning: Conviction for making a false statement may result in imprisonment for up to five years and/or a fine up to $10,000

MO 231-0159 (REVISED 04-07)   *Required for registration pursuant to §115.155 RSMo and §115.158 RSMo



**Attachment 5 - page 1 of 1**